**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION**

| | |
|---|---|
| TELECO, INC., WILLIAM M. ROGERS, and WILLIAM "BILLY" MICHAEL ROGERS II,<br><br>               Plaintiffs,<br><br>v.<br><br>BRETT MUTOLO,<br><br>               Defendant. | Civil Action No: 6:23-cv-03563-DCC<br><br><br>**REPLY IN SUPPORT OF MOTION TO STAY SCHEDULING ORDER AND DISCOVERY** |

Defendant Brett Mutolo ("Brett Mutolo") respectfully submits this Reply Memorandum in support of his motion to stay the scheduling order and discovery pending the Court's ruling on his dispositive motion to dismiss the case for lack of subject matter jurisdiction.

1. **Plaintiffs' Introduction contains multiple inaccuracies and mischaracterizations.**

   a. **The "crux" of the case is about Plaintiffs' misconduct**

This case is about greed, manipulation, and loss – but not Brett Mutolo's greed, not Brett's manipulation of Plaintiffs, and not Plaintiffs' loss. To the contrary, it is Plaintiffs' greed, Plaintiffs' manipulation of Brett, and Brett's loss at the hands of Plaintiffs. But for Plaintiffs' investing their funds in off-shore crypto exchanges owned by Brett and then taking actions resulting in those exchanges being locked down and frozen, thereby preventing Brett's access to the accounts, they would not have lost their funds (as well as Brett's funds).

It only was by coincidence that these parties met one another. Plaintiff William Rogers Sr. is an extremely wealthy man who is part of an extremely wealthy family that had prospered for decades through a telecommunications company with offices in Florida and South Carolina.

Rogers Sr. splits his time between these two states and at one point declared he was domiciled in Florida, where he met and ultimately married Brett's aunt. Rogers Sr. and his family also run an extremely lucrative private hedge fund in which they invest funds from accredited investors outside the purview and oversight of the Securities and Exchange Commission.

In 2021, Plaintiffs were looking to break into the brave new world of crypto, which effectively converts the arcane art of cryptography into a dizzying array of moneymaking opportunities that can be maximized through the application of mathematical algorithms and protocols. If skillfully done, it can be like running a legal casino. But it requires capital, and it requires an understanding of cryptocurrencies. Plaintiffs had the former but not the latter—until they discovered Brett.

Brett was a young man, only 24 years old, who was barely out of college and living with his parents when Plaintiffs found him. His family was not wealthy, and Brett was struggling to pay off school debts by digging pools. Brett is a kind and trusting soul, yet he is socially awkward and has struggled for many years with anxiety, depression, and debilitating dizzy spells from Meniere's disease. But one thing going for him was a knack for crypto trading. He made a little money for himself and his aunt, who introduced him to her new, wealthy boyfriend, Rogers Sr. Rogers Sr. saw dollar signs, realizing that he could take advantage of the skills of this ingenius yet troubled young man.

Rogers Sr. brought Brett into his enterprise. His brother groomed Brett as a trader, telling Brett he was like a son to him, while his grandson became Brett's "buddy." They developed Brett's skills and began having Brett invest their money, but keeping all of it in Brett's accounts so as to keep it hidden from the IRS. They exerted control over Brett, working him all hours of the day and night. Brett was constantly on call and could not even attend a family wedding or social

engagement without being available to Plaintiffs. His days were spent on "Discord" with Plaintiffs, a computer-based method of texting and telecommunicating. Colin exerted control over Brett's accounts and maintained the passwords imprinted on metal "tins."

Although Brett was manipulated and controlled and coerced to work long hours, Plaintiffs failed to pay him very much. They refused to pay him commissions to which he was entitled, instead offering him the promise of future riches. Brett desperately needed medical insurance to cover his mental and physical illnesses, and so they made him a salaried employee of TELECO even though he was actually working for Plaintiffs, their relatives and friends, and their hedge fund.

Brett was the perfect mark. The Plaintiffs could manipulate him to put their money into his personal accounts so that the profits would go unnoticed by the IRS, and they were able to get him to work extensive hours so that they could become richer than ever before. But problems arose when funds could not be moved out of Brett's KuCoin account because it was an overseas exchange not regulated by the SEC and not within the jurisdiction of the United States. Through their own actions, the Plaintiffs got Brett locked out of his accounts. Their pressure upon Brett triggered his anxiety, depression, and Meniere's, which ultimately resulted in Plaintiffs sending private investigators to Brett's parents' home on August 7, 202. They flashed badges at Brett and his parents and threatened them with devastating government action if Brett failed to turn over not only Plaintiffs' devices but also Brett's personal computer and phone, which he did. Plaintiffs promptly attempted to log into the accounts, but the accounts were frozen and/or locked down even further. They remained frozen and untouched from that point in time until the accounts were accessed by all parties as part of the proceedings of this lawsuit.

b. **Plaintiffs' incorrectly state that Mutolo failed to fully comply with the Injunction.**

Plaintiffs argue that Brett failed to fully comply with the Preliminary Injunction. This allegation is unfounded and incorrect, as Brett has fully complied with the injunction and all other Court orders. Plaintiffs' support this false allegation with a reference to ECF Nos. 30, 36, 42, 44, and 90. A review of these motions and the Court's rulings on them demonstrate that they do not establish or support in any way that Brett has not complied with the injunction:

| ECF No. | Motion | Order |
|---|---|---|
| 30 | Motion for Entry of Scheduling Order | Oral Order denying [30] Motion for entry of scheduling order [3.26.24] |
| 36 | Emergency Motion to Compel Defendant Brett Mutolo to Comply with the Courts Order and for Imposition of Sanctions | Oral Order granting in part* [36] Motion to Compel as set out in 3/26/24 status conference [3.26.24]<br><br>*Judge Austin did not compel anything but instead allowed Plaintiffs to file a Motion for Limited Discovery. See Transcript [ECF No. 70 at 22-24]. |
| 42 | Emergency Motion to Amend/Correct Plaintiffs Emergency Motion to Modify the Preliminary | Oral Order denying [42] Motion to Amend Preliminary Injunction [3.26.24] |
| 44 | Motion for Status Conference | A status conferenced occurred on 3/26/24 in which the above Orders were issued |
| 90 | Motion to Compel re Emails | Oral Order denying, with leave to refile, [90] Motion to Compel [5.6.24] |

The above chart objectively demonstrates that Plaintiffs' assertion is false. Plaintiffs assert in another portion of their Response memorandum that they have had to have multiple status conferences that they allege are "*directly* related to Defendant's noncompliance with prior orders. (ECF Nos. 57, 60, 70, 101.) (emphasis in original)." However, Plaintiffs fail to cite to any particular aspect of these conferences showing how they are related to any noncompliance, and so it is impossible to respond. Undersigned counsel is confident that a review of any transcript from any of the status conferences will demonstrate that Plaintiffs have failed to identify any

noncompliance. If Plaintiffs believe that Brett has failed to comply with the preliminary injunction, then they may file a motion and properly present this claim to the Court.

### c. **Plaintiffs inaccurately characterizes Brett's ability to conduct discovery.**

Plaintiffs argue that Brett has been free to conduct discovery for 88 days and therefore that a request to conduct discovery as part of the pending Motion to Dismiss is somehow improper or is inconsistent with the present motion to stay discovery. However, Plaintiffs' argument fails to appreciate that (1) certain limitations are imposed in discovery, such as one deposition per person, which does not allow for a deposition as to domicile independently from a full deposition, (2) the scope of discovery has not been set by the pleadings (e.g., the Answer and any counterclaims have not been required to be filed under the rules, and so the scope of discovery has not been established), and (3) if the case is dismissed for lack of subject matter jurisdiction, then no substantive discovery into the claims, defenses, and/or counterclaims should occur at all in this forum but instead should occur in a different forum.

Plaintiffs also cite that Brett participated in a Rule 26(f) Report and Discovery Plan filed on May 20, 2024, but did not raise the issue of a stay. The reason for this is very simple and straightforward. As indicated in Plaintiffs' brief, Judge Austin indicated at the hearing on May 6, 2024, that she intended to rule quickly on the Motion to Dismiss but that she would wait until after May 10, 2024. Judge Austin revisited this issue at the end of the hearing:

> THE COURT: My plan was to enter an order today -- a Scheduling Order today so that you all can go ahead and start regular discovery in this case, get this case moving. So, go ahead and get this case moving. Also, I know we still need to rule on this Motion to Dismiss the Amended Verified Complaint, but what I will do is wait until Friday for your response, but I am going to go ahead and require that you go ahead and answer this complaint as well, so we can get this case moving. Okay. Not an order today, I will wait until your response, if I don't dismiss it, then I will expect that you go ahead and answer and get this case moving forward.

[ECF No. 120 at 10].

Because the Court indicated that the case would be moving forward with a Scheduling Order and a denial of the motion to dismiss—and in fact that a Scheduling Order had already been issued requiring a Rule 26(f) Conference to take place by May 6, 2024—undersigned counsel understandably complied with the Scheduling Order and did have the impression at the time that the Motion to Dismiss would be granted or denied within a matter of days. If granted, then the case would conclude. If denied, then the case, and Answer and Counterclaims, and discovery would proceed (and possibly there would be limited discovery focused on the sole issue of domicile prior to the ruling). Undersigned counsel did not anticipate at the time that Judge Austin would never rule upon the Motion to Dismiss or that the case would be reassigned to a different judge, although undersigned counsel did suspect that Judge Austin might have changed her mind following receipt of the Reply memorandum and was going to grant the motion.

Either way, undersigned counsel's participation in the Rule 26(f) Conference, submission of a discovery plan, and subsequent consent to extend the scheduling order deadlines was not inconsistent with the position taken in the Motion to Dismiss and is not contradictory to the position taken in the present Motion to Stay. Indeed, all of these reasons justify and explain the purpose and need for the Motion to Stay.

   d. **Plaintiffs incorrectly argue that the pleadings are not relevant to the scope of discovery.**

Plaintiffs also argue that the pleadings do not bear upon the scope of discovery, which is entirely inaccurate. It is axiomatic under Rule 26 that the scope of discovery generally extends to any "matter that is relevant to any party's claim or defense." Brett has yet to present his claims or defenses. Accordingly, until he files an Answer and any Counterclaims, as he intends to do once the proper forum is established, then it is impossible to determine the scope of discovery.

e. **Plaintiffs unfairly state that the present motion is "disingenuous" and a "baseless delay tactic."**

Plaintiffs further contend that Brett's position is "disingenuous" and a "baseless delay tactic," which is completely unfounded and has no place in a legal argument. The reasons for Brett's opinions are clearly and plainly stated above and fully explain legitimate reasons for the motion, which generally are premised upon the concept that pleadings should precede discovery. And of course, this is the typical course, as the Court generally issues a scheduling order and requires a Rule 26(f) conference, triggering the commencement of discovery, after the Defendant files an Answer and the pleadings are closed.

Here, it appears that Judge Austin intended to decide the Motion to Dismiss and to move forward with discovery. It is unknown why she did not rule on the Motion to Dismiss either before or at the time she issued the Scheduling Order, but it was evident from her statements at the hearing as cited above that she intended to do so. She may have changed her mind or simply not addressed the matter prior to the case being reassigned. But the outcome has been that the case has continued now for another ten weeks without the Motion to Dismiss being decided, thereby justifying and prompting the Motion to Stay.

2. **Plaintiffs rely upon an incorrect legal standard.**

a. **The standard for a general "stay" is different than one for a stay of discovery and other scheduling deadlines.**

Plaintiffs cite to case law concerning a general stay of an entire case, which is inapplicable to a stay of discovery and scheduling deadlines. Brett does not seek to stay the case but instead to stay and extend the deadlines until after the Answer is required to be filed under the Federal Rules of Civil Procedure, which is not until 14 days after the Motion to Dismiss is decided. Thus, the case law and authorities cited in the original Motion to Stay are the proper standards for the Court

to consider. Plaintiffs have not addressed these standards at all. Moreover, Local Rule 16.00 specifically authorizes such a stay and does not even require consultation or a separate memorandum, which implies that the motion need not meet any particular standard and is within the Court's discretion to grant as a matter of course.

**b. <u>Even under the legal standards cited by Plaintiffs, the Motion to Stay should be granted.</u>**

Even under the legal standard cited by Plaintiffs, the motion should be granted. Judicial economy clearly is served to allow for a dispositive motion to be resolved in advance of discovery because granting the motion would <u>preclude</u> discovery. Also, Brett would be prejudiced if he were required to conduct discovery before the scope of discovery has been established by his Answer and Counterclaims, as asserted above. The scope of discovery would be extremely limited if his own counterclaims have not been asserted. And finally, Plaintiffs would not be prejudiced. They argue that they are prejudiced by delay because of the nature of cryptocurrency and the potential to hide assets. This argument is undermined by their own actions of (1) waiting one year between the final events alleged in their Complaint (when they took Brett's computers on August 7, 2022) and when they filed this case in July 2023, and (2) waiting until July 2024 to issue any discovery to Brett (namely, the Request for Admissions that prompted this Motion to Stay).

Finally, Plaintiffs also cite to Judge Dawson's Order granting a temporary injunction as denoting that "time is of the essence" and that they will be prejudiced if not allowed discovery from Brett; yet they already made these arguments to Judge Dawson himself who rejected them nine months ago:

> TEXT ORDER <u>denying [7] Plaintiffs Teleco, Inc., William M. Rogers, and William "Billy Michael Rogers II's (collectively "Plaintiffs") Motion for Expedited Discovery</u> and denying [13] Defendant's Motion for Extension of Time as moot.

"A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except... when authorized by these rules, by stipulation, or by court order." Fed. R. Civ. P. 26(d)(1) (emphasis added). Thus, the court has discretion when deciding matters related to the timing and scope of discovery. See Fed. R. Civ. P. 26(b) and (d). "When presented with a motion to commence discovery prior to the Rule 26(f) conference, courts generally apply a reasonableness or good-cause standard, taking into account the totality of the circumstances in which the motion is presented." Humphrey v. Sallie Mae, Inc., No. 3:10-CV-01505-JFA, 2010 WL 2522743, at *1 (D.S.C. June 17, 2010) (citations omitted). "Factors considered under the reasonableness test include: '(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of typical discovery process the request was made.'" Id. (citation omitted).

After reviewing the memoranda submitted, and <u>in light of this Court's order granting Plaintiff's Motion for Preliminary Injunction (DE 15), the Court does not find there is good cause for the expedited discovery requested in Plaintiffs' motion.</u> Accordingly, Plaintiffs' motion is denied. Furthermore, in light of this order and the fact Defendant has filed a response to the current motion, Defendant's Motion for Extension of Time to Respond to Plaintiffs' Motion for Expedited Discovery is denied as moot.

Signed by the Honorable Joseph Dawson, III on 10/4/2023. (lgib, )

Thus, after Judge Dawson issued the Order granting a preliminary injunction, he ruled that Plaintiffs were <u>not</u> entitled to discovery in advance of a Rule 26(f) conference (which would occur only after Brett filed an Answer and the Court issued a Scheduling Order) because they were fully protected by the injunction.  This continues to be true today, and so there would be no prejudice to Plaintiffs if the Motion to Stay were granted.

3. **Brett reasonably seeks to preserve the right to assert his Fifth Amendment privilege if he chooses to do so.**

Plaintiffs have pursued criminal charges against Brett through the United States Attorneys Office.  As a result, undersigned counsel (who practices in civil court and not criminal court) has been especially cautious to preserve Brett's Fifth Amendment privilege not to testify against himself.  Counsel specifically raised this concern to the Court at the hearing at his initial

appearance at the hearing on the motion for a preliminary injunction before Judge Dawson. [Transcript at 40-41.] Such a concern is valid independently from the legitimacy of criminal allegations because it is axiomatic that (1) it is impossible to respond to criminal charges before they are actually asserted, and (2) a potential defendant in a criminal proceeding should not be coerced into so responding through the employment of a civil action. Brett should not be required to make this decision in a civil forum that has not even determined whether it has subject matter jurisdiction over the action.

**4. Brett has cooperated fully.**

Brett has cooperated fully with all Court Orders and even assisted Plaintiffs in discovery efforts beyond the requirements of those Orders. This cooperation began at the very outset of the case when he agreed, through undersigned counsel, to consent to the requested injunction. He also appeared in the courtroom to work with Plaintiffs and experts to access the frozen accounts, and he subsequently worked with Special Agent Joseph Lea to access the accounts.

**Conclusion**

Accordingly, Brett respectfully requests that the Motion to Stay be granted.

Respectfully submitted,

**WYCHE, P.A.**

*s/William M. Wilson III*
William M. Wilson III (Fed. I.D. # 07611)
200 E. Broad St., Suite 400
Greenville, SC 29601
Phone: 864-242-8200
Fax: 864-235-8900
bwilson@wyche.com
***Attorneys for Defendant Brett Mutolo***

July 19, 2024
Greenville, South Carolina