IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

TELECO, INC., WILLIAM M.            )        C.A. No. 6:23-cv-03563-DCC
ROGERS, and WILLIAM "BILLY"         )
MICHAEL ROGERS II,                  )
     Plaintiffs,                    )
                                    )
v.                                  )
                                    )        **OPINION AND ORDER**
BRETT MUTOLO,                       )
     Defendant.                     )
                                    )
and                                 )
                                    )
BRETT MUTOLO,                       )
     Counterclaimant and Third-     )
     Party Plaintiff,               )
                                    )
v.                                  )
                                    )
TELECO, INC., WILLIAM M.            )
ROGERS, and WILLIAM "BILLY"         )
MICHAEL ROGERS II,                  )
     Counterclaim Defendants,       )
                                    )
and                                 )
                                    )
ROGERS FAMILY INVESTMENTS,          )
LLC, NEW ERA ASSET                  )
MANAGEMENT, LLC, REAL ESTATE        )
UNLIMITED, LLC, WMR & FAMILY,       )
LLC, BOB ROGERS, and COLIN          )
ROGERS,                             )
     Third-Party Defendants.        )

This matter is before the Court on Plaintiffs TELECO Inc ("TELECO"), William M

Rogers ("Rogers Sr."), and William "Billy" Michael Rogers, II's ("Billy") (collectively,

"Plaintiffs") Partial Motion to Dismiss Defendant Brett Mutolo's ("Mutolo") counterclaims; Mutolo's Motion to Dismiss the Second Amended Complaint (the "SAC"); Third-Party Defendants New ERA Asset Management LLC ("NEAM"), Real Estate Unlimited LLC "REU"), Bob Rogers ("Bob"), Colin Rogers ("Colin"), Rogers Family Investments, LLC ("RFI"), and WMR & Family LLC's ("WMR") (collectively, the "Third-Party Defendants") Motion to Dismiss Mutolo's Third-Party Complaint; and Mutolo's Motion to Stay.  ECF Nos. 150, 161, 167, 194.  For the following reasons, Plaintiffs' Motion to Dismiss Mutolo's counterclaims is granted in part and denied in part, Mutolo's Motion to Dismiss is denied, the Third-Party Defendants' Motion to dismiss is granted, and Mutolo's Motion to Stay is denied.

## I.  BACKGROUND

### A.  Procedural History

On July 24, 2023, Plaintiffs initiated this action against Mutolo, asserting claims for violations of the Federal RICO statute, breach of duty of loyalty, breach of fiduciary duty, fraud, constructive fraud, negligent misrepresentation, conversion, unjust enrichment, and accounting.  ECF No. 1 at 34–59.  On April 1, 2024, Plaintiffs filed their first amended complaint, which removed the claims brought under the Federal RICO statute against Mutolo.  *See* ECF No. 66.  Mutolo moved to dismiss the first amended complaint for lack of subject matter jurisdiction.  ECF No. 94.  On September 5, 2024, the Plaintiffs filed a consent motion to amend the first amended complaint, which was granted, and the SAC was filed on September 6, 2024.  ECF No. 140.  Accordingly, the Court denied Mutolo's motion to dismiss the first amended complaint as moot.  ECF No. 142.  Currently, the SAC is the operative complaint.  In the SAC, Plaintiffs bring only state law claims and

assert the Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332. ECF No. 140 at 3, 30–40. On November 4, 2024, Mutolo moved to dismiss Plaintiffs' SAC for lack of subject matter jurisdiction. ECF No. 161. Mutolo also filed an Answer to the SAC,[1] asserting counterclaims against Plaintiffs and bringing a third-party complaint against the Third-Party Defendants. *See* ECF No. 145. Plaintiffs moved to dismiss Mutolo's counterclaims, and the Third-Party Defendants moved to dismiss Mutolo's third-party complaint. ECF Nos. 150, 167.

The Court held a hearing on November 14, 2024, and directed the Parties to respond to all pending Motions to Dismiss. ECF No. 170. All Parties filed their respective responses and replies to the pending Motions. *See* ECF Nos. 176, 177, 178, 180, 181. 182. On February 28, Mutolo filed a Motion to Stay all scheduling order deadlines until the Court ruled on his Motion to Dismiss for lack of subject matter jurisdiction. ECF No. 194. Plaintiffs responded in opposition and Mutolo replied. ECF Nos. 195, 197. These Motions are now ripe for review.

## B. Factual Background[2]

In 2021, Plaintiffs and the Third-Party Defendants (collectively, the "Mutolo Claim Defendants") were looking for opportunities to invest in cryptocurrency ("crypto") and

---

[1] Mutolo filed an amended answer as a matter of course. *See* ECF Nos. 143, 145. For purposes of this Order, the Court will refer to Mutolo's amended answer as his "Answer."

[2] There are multiple motions to dismiss before the Court. However, Mutolo's Motion to Dismiss the SAC only challenges the Court's jurisdiction under 12(b)(1). Mutolo makes a factual challenge to Plaintiffs' jurisdictional assertion, and accordingly, as set out fully below, the Court considers evidence outside the pleadings to evaluate whether it has subject matter jurisdiction. Plaintiffs and the Third-Party Defendants seek to dismiss Mutolo's counterclaims and third-party claims for failure to state a claim under 12(b)(6). Therefore, for purposes of ruling on Plaintiffs' and the Third-Party Defendants' Motions,

began looking for someone with an understanding of crypto to help them invest capital in this area. ECF No. 145 at 29. When the Mutolo Claim Defendants met Mutolo, he was 24 years old, continuing his education at a local college, and living with his parents in Florida. *Id.* Mutolo had developed an aptitude for looking into virtual currencies, like crypto, that had speculative value. *Id*. Rogers Sr. initiated the contact with Mutolo and hired him. *Id.*

    1. *Mutolo's Employment*

In June 2021, Mutolo was hired as an independent contractor for RFI to be a part-time financial analyst supervised by Bob and Colin. *Id.* at 30. Rogers Sr. owned and controlled RFI. *Id.* Mutolo's work involved researching cryptocurrencies and/or planning to invest cryptocurrencies. *Id.* But Mutolo did not have any control over his work. *Id.* Bob and Colin both closely monitored and controlled all work Mutolo did for RFI. *Id.* Mutolo was hired by RFI to work 30 hours per week; however, he worked many more hours at the demand and insistence of RFI without being compensated for the additional work. *Id.* The scope of his employment did not include Mutolo investing the Mutolo Claim Defendants' funds in his personal crypto accounts. *Id.*

Mutolo requested certain health insurance benefits after his father lost a job, and the Mutolo Claim Defendants then allowed Mutolo to become an employee of TELECO in order to obtain health insurance benefits, beginning March 2, 2022. *Id.* Mutolo continued to report daily to Colin and Bob, who did not work for TELECO. *Id.* Mutolo's work hours, requirements, and substance did not change once he became an employee

---

the Court assumes the truth of all facts alleged in Mutolo's counterclaims and third-party complaint, and the recitation of facts is taken therefrom.

of TELECO.  *Id.*  Mutolo's compensation did not change after he became an employee of TELECO.  *Id.*

Between May 10 and June 14, 2022, Mutolo also worked for NEAM as a trader in the stock market.  *Id.* at 31.  There was no distinction in term of Mutolo's work for TELECO, NEAM, and RFI.  *Id.*  Mutolo initially was paid a flat salary to work 30 hours per week as a part time employee of RFI.  *Id.*  This arrangement continued at TELECO but full time at 40 hours.  *Id.*  Mutolo regularly worked more than 30 hours per week for RFI and then more than 40 hours per week for TELECO, and he often worked 70 hours or more per week.  *Id.*  Mutolo was not paid for more than the salary set for his 30 hours (for RFI) or 40 hours (for TELECO).  *Id.*  Mutolo's work for NEAM was completely uncompensated outside of the salary paid by RFI or TELECO.  *Id.*  Mutolo typically worked 40 hours per week for NEAM during the time he was employed (in addition to his hours for RFI/TELECO).  *Id.*  Mutolo would meet with Bob almost every morning and afternoon during his employment to be mentored and talk about the stock market.  *Id.*

### 2. *Mutolo's Compensation*

The Mutolo Claim Defendants promised to pay commissions to Mutolo calculated based upon 10% of profits earned at end of each day as reflected by Billy's spreadsheets ("RFI Commissions"), as well as commissions on trading for NEAM ("NEAM Commissions") (collectively, "Commissions").  *Id.*  Mutolo earned the RFI and NEAM Commissions, but they were not paid.  *Id.* at 31, 33.  Line items for commissions to be paid to Mutolo were included on prepared investment spreadsheets, but the Mutolo Claim Defendants would delete the line items when they forwarded the spreadsheets to Mutolo.  *Id.* at 34.  Simultaneously with the failure to pay these Commissions, the Mutolo Claim

Defendants further made promises that Mutolo would be paid millions of dollars in the future when the fund launched and that he was being given the opportunity of a lifetime and should remain quiet, thereby manipulating and coercing Mutolo into silence. *Id.*

The Mutolo Claim Defendants promised to pay reimbursements for expenses incurred by Mutolo, but they never did so. *Id.* at 32. Mutolo was always on call for RFI, TELECO, NEAM, and all other Mutolo Claim Defendants. *Id.* Mutolo was routinely in constant communication with Bob and Colin. *Id.* Plaintiffs, including RFI as the employer, classified Mutolo as an independent contractor. *Id.* Mutolo initially kept track of his working hours and recorded them for the Mutolo Claim Defendants, but the Mutolo Claim Defendants asked him to stop keeping a record of his hours. *Id.* Plaintiffs failed to pay Mutolo for overtime, and Mutolo had no option other than performing work beyond the agreed upon 30 hours without compensation in order to avoid termination. *Id.* Bob, Rogers Sr., and Billy owned and controlled RFI, TELECO, and NEAM. *Id.* Billy was and remains the Chief Operating Officer ("COO") of NEAM. *Id.* Bob owned NEAM. *Id.* RFI, NEAM, TELECO, REU, and WMR were effectively operated as a single business enterprise by Rogers Sr., Billy, Bob, and Colin. *Id.* at 38.

3. *Investment in Mutolo's Personal Accounts*

Bob and Colin developed Mutolo's investing skills and began having Mutolo invest their money in Mutolo's personal accounts in or around May 2022. *Id.* at 33. Instead of providing corporate accounts in which Mutolo would invest, the Mutolo Claim Defendants persuaded him to invest their money in Mutolo's personal accounts (with KuCoin and MEXC) and would send the money to his accounts. *Id.* Mutolo routinely asked about the corporate entities being set up. *Id.* In this manner, the Mutolo Claim Defendants

purposefully sought to keep profits hidden from the Internal Revenue Service ("IRS") and thereby evade personal tax liability and/or burden Mutolo with their tax liability. *Id.* The Mutolo Claim Defendants exerted control over Mutolo's accounts and maintained the passwords imprinted on metal "tins." *Id.* Mutolo's investments earned millions of dollars for the Mutolo Claim Defendants. *Id.* at 34. Mutolo also invested other funds in his personal KuCoin and MEXC accounts that did not belong to the Mutolo Claim Defendants. *Id.* These funds included personal funds and funds from individuals who are not party to this lawsuit such as Mutolo's family members and other third-parties. ECF No. 145 at 13, 20, 34, 36.[3]

Mutolo lost access to his KuCoin and MEXC accounts after the Mutolo Claim Defendants attempted to log into them, which resulted in them becoming frozen and locking out Mutolo from his own accounts (the "Lockdowns"). *Id.* at 34. Specifically, the MEXC account was frozen on July 5, 2022, when Colin, in concert with Mutolo Claim Defendants, coerced Mutolo to give him login information and logged in despite Mutolo warning them that they should not do it because it could get the account locked, which resulted in the MEXC account becoming frozen and locked down ("MEXC Lockdown"). *Id.* Although Mutolo worked with Colin to get the MEXC account unlocked, they could not get the account unlocked. *Id.*

The KuCoin account was locked down when the Mutolo Claim Defendants attempted unauthorized access to the account on or about August 6, 2022, when the Mutolo Claim Defendants coerced Mutolo to give the log in information to them ("KuCoin

---

[3] Mutolo incorporated his answers to the SAC into his counterclaims. ECF No. 145 at 27.

Lockdown"). *Id.* This coercion included Rogers Sr.'s statements that non-party Jim McNulty would sue all of them and that Mutolo would go to jail if he did not provide the information and Bob's statements that Mutolo should kill himself and that he was a waste of skin. *Id.* These statements were all made to coerce Mutolo to provide the necessary information to them to log in. *Id.* Billy and Colin were on a call with Mutolo when Colin attempted to log in despite Mutolo's warnings that it could lock down the account, and in fact it did result in the KuCoin Lockdown. *Id.*

The Mutolo Claim Defendants sent private investigators to Mutolo's parents' home on August 7, 2022, to take his physical computer devices and phones in the hopes that they could access the accounts and unlock them. *Id.* These private investigators flashed badges at Mutolo and his parents and threatened them with devastating government action if Mutolo failed to turn over not only Plaintiffs' devices but also Mutolo's personal computer and phone (collectively, "Devices"). *Id.* Mutolo unwillingly gave them the Devices. *Id.* The Mutolo Claim Defendants promptly used the Devices in an attempt to log into the accounts, without Mutolo's consent or permission, but the accounts were frozen and/or locked down even further. *Id.* at 36. They remained frozen and untouched from that point in time until the accounts were accessed by all parties in the Courtroom as part of the proceedings in this lawsuit. *Id.* Colin and Billy Jr. were acting on behalf of the Mutolo Claim Defendants at the time of the Lockdowns. *Id.*

At the time of the Lockdowns, there was a total of approximately $26,000,000 in the accounts ("Total Funds"). *Id.* Upon information and belief, the current amount of funds in the KuCoin and MEXC accounts is less than $100. *Id.* Upon information and belief, the Total Funds either (a) were converted by KuCoin and MEXC or some bad actor

associated with these exchanges, (b) were seized by KuCoin and MEXC due to the false claims of fraud made by the Mutolo Claim Defendants, and/or (c) were liquidated in trades that continued to be executed without the ability of Mutolo to access the accounts and discontinue trading. *Id.* at 35–36. Thus, the Total Funds were completely lost as a result of the Lockdowns, and the Lockdowns were caused by the Mutolo Claim Defendants. *Id.* at 37. Accordingly, the losses claimed by the Mutolo Claim Defendants were due to their own actions. *Id.*

      4. *Mutolo's Health Conditions*

At the time Mutolo was hired, he had struggled for many years with anxiety, depression, and debilitating dizzy spells (and loss of hearing in one ear) from Meniere's disease (collectively, "Health Conditions"). *Id.* at 29. The Mutolo Claim Defendants were aware before hiring him that he was struggling with one or more of these Health Conditions. *Id.* Around the time of the Lockdowns, Bob, Rogers Sr., Billy, and Colin berated Mutolo verbally, including indicating it was his fault, wishing that Mutolo would die, and telling Mutolo he would be sued and was going to jail or prison. *Id.* at 37–38. These statements to Mutolo led him to feel suicidal because they convinced him at the time that he was to blame because he was the owner of the accounts and because they threatened him with criminal action and incarceration. *Id.* at 38. The Mutolo Defendants' pressure upon Mutolo triggered his anxiety, depression, and Meniere's, resulting in increasing the severity of his Health Conditions. *Id.*

## II. APPLICABLE LAW

### A. Motion to Dismiss Pursuant to 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) permits the dismissal of an action if the complaint lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Lack of subject matter jurisdiction may be raised at any time by a party or the court. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006). "When a Rule 12(b)(1) motion challenge is raised to the factual basis for subject matter jurisdiction, the burden of proving subject matter jurisdiction is on the plaintiff," or party otherwise asserting subject matter jurisdiction. *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). In deciding the motion, "the district court may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Mowery v. Nat'l Geospatial-Intelligence Agency*, 42 F.4th 428, 433 (4th Cir. 2022) (quoting *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004)). "When such 'factual' challenges are asserted, a trial court may go beyond the allegations of the complaint, weigh the evidence, and satisfy itself as to its jurisdiction to hear the case." *Dira v. Deutch*, No. 97-1119, 1998 WL 276236, at *1 (4th Cir. May 26, 1998). A dismissal should be granted only in those instances in which "the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond, Fredericksburg*, 945 F.2d at 768. "[W]hen the jurisdictional facts are inextricably intertwined with those central to the merits, the court should resolve the relevant factual disputes only after appropriate discovery, unless the jurisdictional

allegations are clearly immaterial or wholly unsubstantial and frivolous." *Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009).

## B. Motion to Dismiss Pursuant to 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits the dismissal of an action if the complaint fails "to state a claim upon which relief can be granted." Such a motion tests the legal sufficiency of the complaint and "does not resolve contests surrounding the facts, the merits of the claim, or the applicability of defenses . . . . Our inquiry then is limited to whether the allegations constitute 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (internal quotation marks and citation omitted). In a Rule 12(b)(6) motion, the court is obligated "to assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). However, while the Court must accept the facts in the light most favorable to the nonmoving party, it "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Id*.

To survive a motion to dismiss, the complaint must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although the requirement of plausibility does not impose a probability requirement at this stage, the complaint must show more than a "sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint has "facial plausibility" where the pleading "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

11

## III.  DISCUSSION

### I.  Mutolo's Motion to Dismiss Pursuant to Rule 12(b)(1)[4]

Mutolo moves to dismiss the SAC for lack of subject matter jurisdiction.  ECF No. 161.  Plaintiffs oppose Mutolo's Motion.  ECF No. 177.  A determination of whether the Court has subject matter jurisdiction is a threshold matter.  Under Federal Rule of Civil Procedure 12(h)(3), "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  "Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto."  *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541, (1986); s*ee also* 28 U.S.C. §§ 1331, 1332.  "When a requirement goes to subject-matter jurisdiction, courts are obligated to consider *sua sponte* issues that the parties have disclaimed or have not presented." *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012).  The requirement of subject-matter jurisdiction cannot be waived or forfeited by the parties. *Id.*

In federal court, original jurisdiction exists where a claim arises under federal law (i.e., federal question) or where the amount in controversy exceeds the sum or value of $75,000 and the claim is between citizen of different states (i.e., diversity jurisdiction). *See* 28 U.S.C. § § 1331, 1332.  Here, Plaintiffs allege the Court has jurisdiction over this suit pursuant to federal question jurisdiction but then allege jurisdiction exists pursuant to

---

[4] On May 6, 2025, Mutolo filed a Motion for Leave to Include Supplemental Materials in support of his Motion to Dismiss.  ECF No. 201.  Because of the Court's duty to consider matters of subject matter jurisdiction at any point during litigation and even *sua sponte*, Mutolo's motion is granted.  *Gonzalez*, 565 U.S. at 141.  Accordingly, the Court considered the supplemental materials provided by Mutolo in deciding this Motion; however, the Court notes that these materials were not dispositive in the outcome.

28 U.S.C. § 1332 and the requirements of diversity jurisdiction. ECF No. 140 at 3. Mutolo contends subject matter jurisdiction does not exist over this case because there is not complete diversity between the opposing parties. ECF No. 161 at 2. Out of an abundance of caution, the Court will analyze whether either federal question or diversity jurisdiction provide the Court with original jurisdiction over this action.

    1. *Subject Matter Jurisdiction Exists*

    First, the Court finds federal question jurisdiction is lacking in this action. "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987); *see also Martin v. Lagault*, 315 F.Supp.2d 811 (E.D. Va. 2004) (applying the well-pleaded complaint rule in the context of a *pro se* complaint). Upon review of Plaintiffs' complaint the Court finds Plaintiffs have not stated a federal cause of action. *See* ECF No. 140. Plaintiffs raise only state law claims and there are no allegations to support a finding that a federal question is presented on the face of Plaintiffs' complaint. *See id.* Further, in response to Mutolo's 12(b)(1) Motion, Plaintiffs do not contend their SAC presents a federal question and rely solely on the existence of diversity jurisdiction. *See* ECF No. 177. Based on the foregoing, the Court finds no basis for subject matter jurisdiction under 28 U.S.C. § 1331.

    Second, the Court turns to whether diversity jurisdiction under 28 U.S.C. § 1332 exists in this action. Because the Parties do not dispute whether the amount in

controversy—claims of damages and relief in excess of $75,000—is met, the only issue before the Court is whether complete diversity exists between all plaintiffs and all defendants. *See* ECF Nos. 161, 177, 182. In their SAC, Plaintiffs allege TELECO is a privately held South Carolina limited liability corporation[5] with its principal place of business located at 430 Woodruff Rd #300, Greenville, South Carolina; Rogers Sr. is a citizen and resident of the State of South Carolina; and Billy is a citizen and resident of the State of South Carolina, and resides in Greenville County, South Carolina; and Mutolo is a citizen and resident of the State of Florida. ECF No. 140 at 10. Mutolo contends that complete diversity is lacking because Rogers Sr. is a citizen and resident of the State of Florida and not the State of South Carolina. ECF No. 161.

As outlined above, "[t]he burden of establishing subject matter jurisdiction is on . . . the party asserting jurisdiction." *Robb Evans & Assoc., LLC v. Holibaugh*, 609 F.3d 359, 362 (4th Cir. 2010). Thus, here, Plaintiffs "bear[] the burden of proof, by a preponderance of the evidence, to show the parties' citizenship to be diverse." *Zoroastrian Ctr. & Darb-E-Mehr of Metro. Washington, D.C. v. Rustam Guiv Found. of New York*, 822 F.3d 739,

---

[5] In the case caption of the SAC and elsewhere, TELECO appears as TELECO Inc, indicating that TELECO is a corporation. *See* ECF No. 140 at 1. A corporation is deemed to be a citizen of every state in which it is incorporated and the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1). However, in the allegations of the SAC, Plaintiffs refer to TELECO as a "limited liability corporation." ECF No. 140 at 10. The phrase "limited liability corporation" is often used as an alternative form of referring to a "limited liability company" ("LLC"). The citizenship of an LLC is determined by the citizenship of its individual members. *Cent. W. Va. Energy Co. v. Mountain State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011). Based on the other pleadings and filings in this case, it appears TELECO is a corporation. Furthermore, Mutolo does not contend that TELECO is an LLC rather than a corporation. *See* ECF No. 161. However, out of an abundance of caution based on Plaintiffs' unclear allegations, the Court directs Plaintiffs to clarify the organizational structure of TELECO as a business entity within ten (10) days of the entry of this Order.

748 (4th Cir. 2016). "[F]or purposes of determining the existence of diversity jurisdiction, the citizenship of the parties is to be determined with reference to the facts as they existed at the time of filing." *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 569–70 (2004). An individual's citizenship is equivalent to domicile for § 1332 purposes, and domicile requires both residence in a state and an intention to remain there indefinitely. 28 U.S.C. § 1332(c)(1); *see also Johnson v. Advance America,* 549 F.3d 932, 937 (4th Cir. 2008). An individual "can have only one domicile at any one time and that domicile continues until another is established." *Hollowell v. Hux*, 229 F. Supp. 50, 52 (E.D.N.C. 1964). "[A] change or acquisition of domicile is largely a matter of intention, and the motive therefor is completely immaterial." *Id*. "Courts review the totality of the circumstances in determining an individual's domicile." *Fitzgerald v. McHugh*, No. 2:13-CV-3519-PMD, 2015 WL 12803696 (D.S.C. Jan. 9, 2015).

The Court finds the evidence in the record is sufficient to establish Rogers Sr.'s domicile was in South Carolina at the time of the filing of this action. As outlined above, the relevant time is the time of filing for purposes of determining the existence of diversity jurisdiction. *Grupo Dataflux*, 541 U.S. at 569–70. Here, the Complaint was filed in July 2023. *See* ECF No. 1. Rogers Sr. avers his primary residence was and is at Wild Dunes, in Isle of Palms, South Carolina and there is no evidence to the contrary for the time of filing. ECF No. 177-1. Plaintiffs have also submitted record of Rogers Sr.'s payment of taxes as a South Carolina citizen and resident, which were filed under penalty of perjury. ECF Nos. 99-2, 99-7. Rogers Sr. had and does possess a South Carolina Driver's License. ECF No. 177 at 6. Rogers Sr. docks his boat in South Carolina and holds his

primary banking accounts in South Carolina at a South Carolina bank.  ECF. No. 177 at 6.

Mutolo presents several documents tending to show that Rogers Sr., at one time or another, intended for his domicile to be in Florida, and Roger Sr. concedes that he, at least, considered changing domiciles.  ECF Nos. 161 at 11–17; 177 at 5.  However, none of the evidence relied upon by Mutolo is from the time of filing in 2023.  *See* ECF Nos. 161 at 11–17 (citing events from 2014 to 2022 or early 2023 at the latest); 201 (citing case filings from 2005).  This evidence, which all predates the time of filing, is insufficient under the circumstances in the face of evidence of Rogers Sr.'s continuous South Carolina residence, driver's license, voting, and tax filings.  Furthermore, the Court does not find the "Declaration of Domicile" relied upon by Mutolo to be dispositive.  *See* ECF No. 182 at 2.  Like the other evidence relied upon by Mutolo, even if Rogers acknowledged his intent to change domiciles at that time, this declaration is remote as it was made more than two years before the filing of this action.  *See* ECF No. 94-1.  Moreover, the declaration is ambiguous in the way it was completed and appears to indicate that Rogers Sr.'s domicile is both in South Carolina and in Florida.  *See id*.  Without more, this declaration is insufficient to establish domiciliary intent as of the date of filing of the action when considered with other contrary evidence.

Based on the record, the Court finds that Plaintiffs have carried their burden to show by a preponderance of the evidence that Rogers Sr. was a South Carolina resident at the time of filing.  Thus, complete diversity exists between all the Plaintiffs and Mutolo, and the Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §

1332.[6]  Accordingly, Mutolo's Motion to Dismiss is denied.  Furthermore, Mutolo's Motion to Stay, which sought a stay of this action pending the Court's resolution of his Motion to Dismiss, is now moot and likewise denied.

### 2.  *Plaintiffs Are Not Entitled to Attorneys' Fees and Costs*

Plaintiffs request an award of attorneys' fees and costs because Mutolo's Motion to Dismiss for lack of subject matter jurisdiction is baseless.  ECF No. 177 at 2.  The Court, however, finds there is no basis to sanction Mutolo or award costs and fees.  While Plaintiffs have carried their burden to show Rogers Sr.'s domicile was South Carolina at the time of the filing, there is also significant evidence presented to establish a good faith basis for disputing Rogers Sr.'s domicile and citizenship.  Mutolo relied on court and government filings, residential addresses, Florida voting records, a statutory form, driver's license, and a boat purchase, all of which provided some evidence that Rogers Sr.'s domicile was Florida at one time.  161 at 11–17; 201.  The totality of the circumstances ultimately supported a finding that Rogers Sr.'s domicile was South Carolina, but this does not mean that Mutolo's motion was baseless.  Accordingly, Plaintiffs' request for attorneys' fees is denied.

## B.  Plaintiffs' Partial Motion to Dismiss

Plaintiffs move to dismiss several of Mutolo's counterclaims, including his claims for violations of South Carolina Unfair Trade Practices Act ("SCUTPA"); Computer Fraud

---

[6] Mutolo also seeks to amend his Answer to withdraw his federal counterclaims and third-party claims without prejudice should the Court find that it lacks subject matter jurisdiction over Plaintiffs' claims.  ECF No. 161 at 2.  Mutolo requests leave to re-assert these federal claims in the event the action is not dismissed.  *Id.*  However, after the Court's disposition of the Motion to Dismiss, the Court finds Mutolo's request for amendment to be moot.  Accordingly, the Mutolo's Motion to Amend his answer is denied with respect to the withdrawal of his federal claims.

and Abuse Act ("CFAA"); South Carolina Omnibus Adult Protection Act ("SCAPA") and

Florida Adult Protective Services Act ("FAPSA"); and Florida Security of Communications

Act, Fla. Stat. § 934.10 ("FSCA"). The Court addresses each claim in turn below.

### 1. Unfair Trade Practices

Mutolo alleges that the Plaintiffs' conduct as set out in the Answer constituted a

violation of SCUTPA.[7] ECF No. 145 at 45–46. SCUTPA creates a private right of action

in favor of any person who suffers an ascertainable loss of money or property "as a result

of the use or employment by another person of an unfair or deceptive method, act or

practice declared unlawful by [this Act]." S.C. Code Ann. § 39-5-140(a). "Unfair methods

---

[7] Mutolo also alleges that Plaintiffs' conduct is a violation of the equivalent Florida Act—the Florida Deceptive and Unfair Trade Practices Act, § 501.201 et seq ("FDUTPA"). ECF No. 145 at 45. To assert a claim under FDUTPA, a plaintiff must allege (1) a deceptive or unfair act in the conduct of trade or commerce; (2) causation; and (3) actual damages. *Ounjian v. Globoforce, Inc.*, 89 F.4th 852, 860 (11th Cir. 2023) (citing *KC Leisure, Inc. v. Haber*, 972 So. 2d 1069, 1073 (Fla. Dist. Ct. App. 2008)). Plaintiffs contend that Mutolo's FDUTPA claim fails because he has not alleged the requisite elements of a FDUTPA claim. ECF No. 150-1 at 8 n.2. Mutolo does not respond to Plaintiffs' arguments concerning his FDUTPA claim. *See* ECF No. 176. Accordingly, his claim under FDUTPA is effectively abandoned. *See Waiters v. Sci. Applications Int'l Corp.*, No. CV 2:17-3227-BHH-BM, 2019 WL 5874132, at *10 (D.S.C. May 10, 2019), *adopted*, 2019 WL 4462810 (D.S.C. Sept. 18, 2019) (stating that plaintiff abandoned claim by failing to address in his memorandum in opposition to defendant's motion to dismiss argument raised in defendant's motion to dismiss); *see also Jones v. Family Health Ctr., Inc.*, 323 F. Supp.2d 681, 690 (D.S.C. 2003) (noting that claim not addressed in opposition memorandum had been abandoned). But even if Mutolo had not abandoned his claim, he has failed to sufficiently plead both causation and actual damages under FDUTPA. *Ounjian*, 89 F.4th at 860. Mutolo alleges only that Plaintiffs' unfair trade practices in violation of SCUTPA caused his damages—not FDUTPA. ECF No. 145 at 46. Additionally, Mutolo has not alleged "actual damages," required for a FDUTPA claim, which have been defined as "the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties." *See* ECF No. 145; *Ounjian*, 89 F.4th at 860–61. Accordingly, the Court finds Mutolo has not sufficiently alleged an FDUTPA claim and this claim is dismissed.

of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are . . . unlawful." S.C. Code Ann. § 39-5-20(a). The SCUTPA is limited, however, in the sense that it is applicable only where the alleged deceptive acts affect the public interest. *Uhlig LLC v. Shirley*, No. 6:08-CV-01208-JMC, 2011 WL 1119548, at *8 (D.S.C. Mar. 25, 2011) (citing *York v. Conway Ford, Inc.,* 480 S.E.2d 726, 728 (S.C. 1997)).

Plaintiffs contend that Mutolo's claim under SCUTPA fails because it does not arise from acts that affect the public interest and there is no factual support for his claim. ECF No. 150-1 at 7–9. According to Plaintiffs, South Carolina law establishes that conduct that only affects the parties to the transaction (e.g., employment relationship) provides no basis for a SCUTPA claim because such disputes do not impact public interest and SCUTPA is not intended to redress a private wrong. *Id.* Mutolo argues that the totality of his allegations in the Amended Answer are sufficient to allege a SCUTPA claim because Plaintiffs' alleged conduct is capable of repetition, Mutolo suffered a loss due to Plaintiffs' alleged conduct, and this conduct went beyond an employer-employee relationship.

Considering relevant case law, the Court finds Mutolo's are allegations are insufficient to plausibly allege the Plaintiffs' "unfair or deceptive act or practice . . . have an impact upon the public interest." *Wright v. Craft*, 640 S.E.2d 486, 501 (S.C. Ct. App. 2006). "An unfair or deceptive act or practice that affects only the parties to a trade or a commercial transaction is beyond the [A]ct's embrace . . . ." *Noack Enters., Inc. v. Country Corner Interiors, Inc.*, 351 S.E.2d 347, 349–50 (S.C. Ct. App. 1986). South Carolina

courts have held that employer-employee relations matters are not covered by the SCUTPA because they are private matters that do not involve the public interest. *See Miller v. Fairfield Communities, Inc.*, 382 S.E.2d 16, 20 (S.C. Ct. App. 1989) (holding that a plaintiff's claim based on the employer-employee relationship is not covered by the SCUTPA); *Davenport v. Island Ford, Lincoln, Mercury, Inc.*, 465 S.E.2d 737, 740 (S.C. Ct. App. 1995) (stating that the employer-employee relationship does not fall within the intended scope of the SCUTPA). Further, this Court, interpreting South Carolina law, has similarly held that claims arising out of the employer-employee relationship are not cognizable under the SCUTPA. *See Uhlig LLC v. Shirley*, No. 6:08-CV-01208-JMC, 2011 WL 1119548, at *9 (D.S.C. Mar. 25, 2011) (holding that disputes arising between employers and employees are private matters that fall outside the scope of the SCUTPA); *Ramsey v. Vanguard Services, Inc.*, No. 8:07–CV–00265–GRA, 2007 WL 904526, at *3 (D.S.C. Mar. 22, 2007) (dismissing Plaintiff's SCUTPA claim because South Carolina law clearly establishes that issues involving the employer-employee relationship fall outside the scope of the SCUTPA); *Johnson v. Greenville Safety Consultants, Inc.*, No. 6:17-CV-02334-AMQ, 2018 WL 2462001, at *3 (D.S.C. June 1, 2018) (finding defendants misclassification of plaintiff and other employees as independent contractors to avoid payroll taxes, overtime pay, and other employee expenses were acts arising from an employee-employer relationship and therefore insufficient to state a claim under SCUTPA).

Plaintiffs contend Mutolo's SCUTPA claim fails because of the employment relationship between Mutolo and Plaintiffs. ECF No. 150 at 7–9. Mutolo argues that his

SCUTPA claim goes beyond "employer-employee relations" because Plaintiffs' investment of funds in his personal accounts was "not within the scope of his employment" and much of Plaintiffs' conduct occurred outside the context of his employment relationship with them.  ECF No. 176 at 16–17.  While Mutolo alleges the "scope of his employment . . . did not include . . . investing [Plaintiffs'] funds in his personal crypto account," as noted above, this Court has found broadly that "SCUTPA does not apply to acts that take place in an employer-employee relationship."  ECF No. 145 at 30; *Rhoades v. Savannah River Nuclear Sols., LLC*, 574 F. Supp. 3d 322, 339 (D.S.C. 2021);  *see also Thornton v. Johnson*, No. 6:20-CV-01449-DCC, 2020 WL 7163347, at *7 (D.S.C. Dec. 7, 2020).  Mutolo alleges repeatedly throughout his counterclaims against Plaintiffs that he was Plaintiffs' "employee."  ECF No. 145 at 30–32, 39–41, 43.  Regardless of whether Plaintiffs' requests to invest funds in Mutolo's personal accounts were within the scope of his employment, based on Mutolo's allegations these actions arose out of Mutolo's employment with Plaintiffs.  *Ramsey*, 2007 WL 904526, at *3 (D.S.C. Mar. 22, 2007) ("Because Plaintiff's complaint clearly arises out of the employer-employee relationship between Plaintiff and Defendant, the Court finds the South Carolina Unfair Trade Practices Act is inapplicable.").  As such, Plaintiffs' claims do not fall within the scope of the SCUTPA.  Accordingly, Plaintiffs' motion to dismiss on Mutolo's SCUTPA claim is granted.

2. *CFAA*

Under certain circumstances, CFAA makes it unlawful for a person to access a protected computer either without authorization or by exceeding authorized access.

Mutolo alleges Plaintiffs violated the CFAA by "working in concert to access his KuCoin and MEXC accounts through coercion and/or without his consent or authorization." ECF No. 145 at 48. Mutolo alleges Plaintiffs' unauthorized access first occurred with respect to the MEXC account on July 5, 2022, and first occurred with respect to the KuCoin account on August 6, 2022, and has continued to occur. *Id.* Mutolo alleges Plaintiffs' conduct resulted in damages including loss of funds. *Id.* Plaintiffs contend Mutolo's CFAA is subject to dismissal because Mutolo has failed to state a claim under CFAA because Mutolo has failed to allege Plaintiffs wrongfully accessed his accounts. ECF No. 150-1 at 10–12.[8] Plaintiffs also contend that Mutolo has failed to allege access "without authorization" or which "exceed authorization" in violation of the CFAA. ECF No. 150-1 at 10–12. Mutolo argues that Plaintiffs either did not have authorization or exceeded authorization and continued access to the account after authorization. ECF No. 176 at 22. Mutolo further contends that, even though he did provide Plaintiffs with his login information, it was only after threats and coercion by the Plaintiffs, so any access was still unauthorized under the circumstances. *Id.*

---

[8] Plaintiffs also contend that Mutolo's CFAA claim is barred by the statute of limitations. ECF No. 150-1 at 10. As an initial matter, it is not clear from the face of the complaint that Mutolo's CFAA claim is barred by the statute of limitations and there are allegations that plausibly support that his claims may relate back to Plaintiffs' initial claims. *See* ECF No. 145. Thus, the Court finds is it inappropriate at this procedural posture to decide the merits of Plaintiffs' statute of limitations affirmative defense. *Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471 (4th Cir. 2005) (explaining that a statute of limitations defense is only appropriately decided on a 12(b)(6) motion when "the time bar is apparent on the face of the complaint"). Even if it were appropriate to address based on Mutolo's pleadings at this juncture, because Mutolo's CFAA claim fails for the reasons addressed herein, the Court finds Plaintiffs' statue of limitations defense is immaterial to the outcome of this claim.

The CFAA is primarily a criminal statute that was enacted to give the federal government a means to prosecute hacking. *United States v. Nosal*, 676 F.3d 854, 858 (9th Cir. 2012).  However, in narrow circumstances, the CFAA permits a private party "who suffers damage or loss by reason of a violation of [the statute]" to bring a civil action "to obtain compensatory damages and injunctive relief or other equitable relief."  18 U.S.C. § 1030(g).  The CFAA is concerned with the unauthorized access of protected computers.  *See id.*  The elements of a CFAA claim are (1) commission of an act prohibited by the statute and (2) "damage" or "loss" within the meaning of the statute.[9]  *Id.* As to the first element and as relevant to this action, the CFAA renders liable a person who "intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains . . . information from any protected computer," in violation of § 1030(a)(2)(C) or "intentionally accesses a protected computer without authorization, and as a result of such conduct, recklessly causes damage[,] or . . . causes damage and loss," in violation of § 1030(a)(5)(B)–(C).  *WEC Carolina Energy Sols. LLC*, 687 F.3d at 201 (quoting 18 U.S.C. § 1030).

Although the CFAA does not define "without authorization," the Fourth Circuit has provided guidance, reasoning that "authorization" means a "formal warrant, or sanction" and based on this definition access "without authorization" occurs when an individual "gains admission to a computer without approval."  *WEC Carolina Energy Sols. LLC*, 687 F.3d at 205 (examining authorized access in the employment context).  Regarding the

---

[9] Damages for maintenance of a civil action requires one of the factors outlined in § 1030(c)(4)(A)(i)(I)–(V). *WEC Carolina Energy Sols. LLC v. Miller*, 687 F.3d 199, 201 n.1 (4th Cir. 2012).  Here, Mutolo sufficiently alleges that its aggregate losses because of Plaintiffs' conduct were "at least $5,000 in value" during a one-year period, which satisfies § 1030(c)(4)(A)(i)(I).  ECF No. 145 at 37.

phrase "exceeds authorized access," the CFAA defines it as follows: "to access a computer with authorization and to use such access to obtain or alter information in the computer that the accessor is not entitled so to obtain or alter."  18 U.S.C. § 1030(e)(6).

Plaintiffs and Mutolo contest whether the Plaintiffs' attempts to access the accounts were either without authorization or exceeded authorization.  Mutolo argues that any access was ostensibly without authorization because it was gained by coercive tactics by the Plaintiffs.  ECF No. 178 at 23.  The Parties provide no authority on how coercion impacts the analysis of authorization, and it appears to the Court that the issue has not yet been addressed by other courts in the civil context.  *See* ECF Nos. 150-1, 176, 181.  Furthermore, in the criminal context, the CFAA does not expressly provide for the defense of duress, and it is unclear whether courts would recognize such a defense. Shane Huang, *Proposing A Self-Help Privilege for Victims of Cyber Attacks*, 82 Geo. Wash. L. Rev. 1229, 1238 (2014).  Given the narrow circumstances under which a private party may recover under the CFAA and the apparent lack of case law applying the statute to similar facts, the Court is hesitant to extend the CFAA in this context.  However, even if it were inclined to find that the CFAA anticipates that unauthorized access includes when a party accesses a computer by means of coercion, Mutolo has still failed to sufficiently allege he was "coerced" into giving up his login information.

Based on Mutolo's own allegations, he provided his login information to Plaintiffs. ECF No. 145 at 12, 34–35.  Mutolo's allegations further indicate that he was actively involved in assisting with and participated in Plaintiffs' attempts to access the accounts. *Id.*  Further, Mutolo's allegation that he was "coerced" is nothing more than a legal conclusion.  Mutolo has not alleged facts to show how a reasonable person's free will

24

would have been overcome by Plaintiffs' actions.  *See, e.g.*, *In re Sea Turtle Cinemas, Inc.*, 440 B.R. 438 (Bankr. D.S.C. 2010) (explaining that duress, in the context of a contract, requires coercion to the extent that under all the circumstances a party cannot exercise his free will due to the other party's threatening or wrongful behavior and that duress rarely exists); *Hamden v. Denny*, No. 7:20CV00236, 2021 WL 1167286, at *7 (W.D. Va. Mar. 26, 2021) (explaining that, in the employment context, the standard for duress or coercion is a high one, and it is not enough to show merely unpleasant alternatives); *Negri v. Nw. Mut. Life Ins. Co.*, 165 F. App'x 247, 249 (4th Cir. 2006) (explaining that a threat to enforce a legal right, such as firing an at-will employee or initiating litigation, cannot constitute duress (citation omitted)).  Indeed, Mutolo's only allegations regarding physical intimidation occurred after he had already given his login information to Plaintiffs.  *See* ECF No. 145 at 34–36 (alleging that Mutolo first gave his login information to Colin on July 5, 2022; he again gave the login information to the Plaintiffs on August 6, 2022; and on August 7, 2022 two persons came to his home and intimidated him into giving up his personal electronic devices).

Even if after gaining access Plaintiffs' exceeded their authorization, Mutolo does not allege that the information that Plaintiffs attempted to obtain from the accounts was off limits to them; in fact, he does not allege that any information was gained or altered at all.  *See id*.  Accordingly, the Court finds that Mutolo has not alleged sufficient facts to support a claim under the CFAA and Plaintiffs' motion to dismiss is granted as to this claim.

3. *SCAPA and FAPSA*

Mutolo alleges that during the time period that he was employed by Plaintiffs and based on his various Health Conditions, he was a vulnerable adult as defined by statute and that during this time he was subject to manipulation, coercion, and exploitation by Plaintiffs, which ultimately resulted in a loss of funds from Mutolo's personal accounts. ECF No. 145 at 42–44. Plaintiffs argue only that Mutolo fails to state a claim for relief under either the SCAPA or FAPSA because South Carolina's Worker's Compensation Act is Mutolo's exclusive remedy. ECF No. 150-1 at 3, 12–13. Mutolo contends that he has sufficiently alleged an SCAPA or FAPSA claim that is not circumvented by the Worker's Compensation Act because (1) Plaintiffs have alleged he is an independent contractor and not an employee; (2) he seeks recovery for exploitation that goes well beyond the scope of employment; and (3) the individual Plaintiffs are the "alter ego" of his employer and accordingly the claim falls outside the scope of the Act. ECF No. 176 at 24.

SCAPA was "enacted to protect ['vulnerable adults'] from abuse, neglect, and exploitation." *Williams v. Watkins*, 665 S.E.2d 243, 245 (S.C. Ct. App. 2008). Likewise, FAPSA allows a "vulnerable adult" to sue for damages if they have been abused, neglected, or exploited and recover damages for such abuse, neglect or exploitation. Fla. Stat. § 415.1111. It is well established that the South Carolina Worker's Compensation Act provides the exclusive remedy to an employee's claim for personal injuries against an employer. *Dickert v. Metropolitan Life Ins. Co.,* 428 S.E.2d 700 (S.C. 1993); *Loges v. Mack Trucks, Inc.,* 417 S.E.2d 538 (S.C. 1992); *McClain v. Pactiv Corp.,* 602 S.E.2d 87

26

(S.C. Ct. App. 2004); *Edens v. Bellini*, 597 S.E.2d 863, 869 (S.C. Ct. App. 2004) ("If a worker is properly classified as a statutory employee, his sole remedy for work-related injuries is to seek relief under the Workers' Compensation Act."). For a claim to be barred by the exclusivity provision, "an injury must arise out of and in the course of employment," which "refers to the time, place and circumstances under which the accident occurs." *Loges*, 417 S.E.2d at 540. An exception to the exclusivity provision exists where the tortfeasor is the "alter ego" of the employer. *Dickert,* 428 S.E.2d at 701; *McLain,* 602 S.E.2d at 89. The alter ego exception applies only to "dominant corporate owners and officers." *Id.*

Mutolo repeatedly alleges that he was an employee of the Plaintiffs at the relevant times. ECF No. 145 at 3, 5, 30–32, 39–43.[10] Taking Mutolo's allegations as true, an employer-employee relationship existed between him and Plaintiffs and, thus, Mutolo's sole remedy for any work-related accident or injury would fall within the exclusive purview of the Worker's Compensation Act. *Edens v. Bellini*, 597 S.E.2d 863, 869 (S.C. Ct. App. 2004). Thus, the Court turns to whether the injuries alleged by Mutolo "[arose] out of and in the course of employment" with Plaintiffs. *Loges*, 417 S.E.2d at 540. Mutolo also alleges the "scope of his employment . . . did not include . . . investing [Plaintiffs'] funds in his personal crypto account" and that Plaintiffs persuaded him to allow them to place

---

[10] Mutolo's argument that the exclusivity of the Worker's Comp Act should not apply based *Plaintiffs*' allegations of his status as independent contractor is unpersuasive at this stage of the litigation as the Court is required to view the facts as *Mutolo* alleges as true, not Plaintiffs. While the scope and nature of Mutolo's employment for Plaintiffs is debated by the Parties, Mutolo repeatedly alleges he was an employee of Plaintiffs, despite any misclassification by Plaintiffs of him as an independent contractor. ECF No. 145 at 3, 5, 30–32, 39–43.

their funds in his private accounts. ECF No. 145 at 30. The scope of Mutolo's employment and employment obligations is yet to be determined and at this stage of pleading, the Court finds he has plausibly alleged the offending conduct may have occurred outside of "the course of his employment." *Loges*, 417 S.E.2d at 540. Thus, the Court finds there are sufficient allegations of injury which may have occurred outside the scope of employment, and thus, the Court declines to find the exclusivity provision of the Worker's Compensation Act applies at this juncture.

Additionally, as noted above, even when an employee is injured during the course of employment if the tortfeasor is the alter ego of the employer, a party may evade the exclusivity of the Worker's Compensation Act. *Dickert,* 428 S.E.2d at 701; *McLain,* 602 S.E.2d at 89. Mutolo alleges several individuals coerced, manipulated, or exploited him in utilizing his personal accounts to make investments then, through their actions, causing the loss of Mutolo's personal funds within those accounts. ECF No. 145 at 10, 13–14, 33–34, 37, 44. Mutolo also sufficiently alleges these individuals owned and/or operated the corporate entities, Mutolo's employers. ECF No. 145 at 28, 32, 38. Here, Mutolo has plausibly alleged that the tortfeasors—the individual Plaintiffs—were the alter ego of his employer—TELECO. For the foregoing reasons, the Court finds Mutolo has sufficiently alleged an injury outside the scope of employment and potential alter ego liability, and thus his claim is plausibly outside the exclusivity of the Worker's Compensation Act. Accordingly, Plaintiffs' Motion to Dismiss Mutolo's SCAPA and FAPSA claims is denied.

     4. *FSCA*

Mutolo also brings a claim under the FSCA based on Plaintiffs recording of a telephone call between the parties. ECF No. 145 at 45. Mutolo alleges that Colin and Billy called Mutolo on or around August 1, 2022, while Mutolo was located in Florida, and Colin recorded the call while he was located in South Carolina. *Id.* Plaintiffs contend Mutolo has failed to state a claim under the Florida statute. ECF No. 150-1 at 13–14.[11] According to Plaintiffs, although Mutolo was in Florida at the time of the call, the caller was, and the recording took place, in South Carolina and, therefore, South Carolina law applies. *Id.* Mutolo argues the events creating the right occurred at the interception of Mutolo's recorded statements, which occurred in Florida because that's where the "words or communication" were uttered, and thus Florida law controls. ECF No. 176 at 25–26.

Under South Carolina conflict of laws principles, "the court applies the law of the place in which the event occurred that created the right on which the party brings suit." *In re Blackbaud, Inc.*, 567 F. Supp. 3d 667, 674 (D.S.C. 2021). In other words, under South Carolina law, the applicable law "is determined by the state in which the injury occurred, not where the results of the injury were felt or where the damages manifested themselves." *Rogers v. Lee*, 777 S.E.2d 402, 405 (S.C. Ct. App. 2015). Here, because the act creating liability for Plaintiffs—the recording of the call—occurred in South Carolina, South Carolina is the place where the injury occurred that created Mutolo's right to bring suit and, accordingly, the Court applies South Carolina. *See Rogers*, 777 S.E.2d

---

[11] Plaintiffs also argue that Mutolo's counterclaim fails to allege any wrongful conduct on the part of TELECO or Rogers Sr., and thus the claim should summarily be dismissed as to those Plaintiffs. ECF No. 150-1 at 13–14. Because the Court finds that Mutolo's claim should be dismissed in its entirety, it declines to address this argument.

at 405.  Because South Carolina is a one-party consent state, Mutolo's consent was not needed to record the call.  *See* SC Code Ann. 17-30-15, 17-30-30.  Therefore, Mutolo has failed to state a claim for relief and his counterclaim is dismissed.

## C.  Third-Party Defendants' Motion to Dismiss

In his Amended Answer, Mutolo brings "third-party claims" in a "third party complaint" against the Third-Party Defendants.  ECF No. 145 at 27.  The Third-Party Defendants contend that Mutolo's third-party claims against them fail because these claims are separate and independent from Plaintiffs' claims and lack derivative connection to Plaintiffs' claims.  ECF No. 167-1 at 7–9.  Because Mutolo's Third-Party claims do not assert a derivative connection to the claims raised by Plaintiffs in the SAC, the Third-Party Defendants contend that these claims are not properly raised as third-party claims under Rule 14 and are really independent claims, which should be dismissed. *Id.* at 9.  Mutolo essentially concedes that his claims are not intended to be indemnification claims for any liability he may have to Plaintiffs and are, accordingly, not allowable under Rule 14.  ECF No. 178 at 4.  However, Mutolo asserts that he does not seek to assert derivative liability under Rule 14, and instead seeks to assert direct claims against the Third-Party Defendants.  *Id.*  Mutolo argues that the addition of the Third-Party Defendants to his counterclaims against the Plaintiffs is proper and authorized by Rule 13(h), pursuant to Rules 19 and 20.  *Id.* at 5.  The Third-Party Defendants contend in reply that even under Rule 13(h), they have not been properly joined.  *See* ECF No. 181.

As an initial matter, the Court notes that Mutolo's Amended Answer reasonably implicates Rule 14 joinder, which controls third-party practice.  *See* Fed. R. Civ. P. 14;

*see* ECF No. 145 (referring to his claims as "third party claims" and entitling the filing as a "third party complaint" against "third party defendants" without citation to any joinder rules).  Based on the context and language of Mutolo's filings, the Court finds unavailing any arguments that the Court and opposing Parties could or should have deduced he intended to add the Third-Party Defendants under Rules 13, 19, and 20.  *See* ECF Nos. 145; 178 at 4–5.

This Court has previously stated that the proper method "for joining the third-party defendants, under the circumstances, would have been a Rule 13(h) motion to join additional parties to a counterclaim under Rule 19 or 20."  *Wired Fox Techs., Inc. v. Estep*, No. 6:15-CV-331-BHH, 2015 WL 13791844, at *7 (D.S.C. Sept. 21, 2015); *see* ECF No. 178 at 6.  In *Estep*, the Court recognized that "[a]lthough, technically no such motion has been filed, to avoid needless delay, the Court would be inclined to give occasion for the third-party plaintiff to amend his pleadings and cure these technical deficiencies" and then gave the third-party plaintiff leave to do so to "reflect the proper procedural mechanism by which the third-party defendants should be joined."  2015 WL 13791844, at *7–*8.  The Court follows suit here.  Like in *Estep*, Mutolo's arguments in his response seek to recharacterize, or at least clarify, the third-party claims in his Amended Answer, which is better accomplished through a Rule 15 motion to amend.  As acknowledged by Mutolo, the claims he seeks to add against the Third-Party Defendants are not proper under Rule 14 as the claims are not derivative of the Plaintiffs' underlying claims as required by the Rule.  Therefore, the Third-Party Defendant's Motion to Dismiss for improper joinder under Rule 14 is granted.  However, Mutolo is granted leave to file a motion to amend his

pleadings to reflect the proper procedural mechanism by which the Third-Party Defendants.  Such motion is to be joined within fourteen (14) days from the date of this Order.

## IV.  CONCLUSION

For the reasons set forth above, Plaintiffs' Motion to Dismiss [150] is **GRANTED IN PART AND DENIED IN PART**, Mutolo's Motion to Dismiss [161] is **DENIED**, the Third-Party Defendants' Motion to Dismiss [167] is **GRANTED**, and Mutolo's Motion to Stay [194] is **DENIED**.  Additionally, as outlined above, Plaintiff TELECO is **DIRECTED** to file supplemental briefing clarifying its organizational structure within **TEN (10) DAYS** of the entry of this Order and Mutolo has leave to file a motion to amend his pleadings within **FOURTEEN (14) DAYS** of the entry of this Order.

IT IS SO ORDERED.

s/ Donald C. Coggins, Jr.<br>
United States District Judge

June 10, 2025
Spartanburg, South Carolina

32