IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| TELECO, INC., WILLIAM M. ROGERS, and WILLIAM "BILLY" MICHAEL ROGERS II, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| BRETT MUTOLO, | ) ) |
| Defendant. | ) ) |
| and | ) ) |
| BRETT MUTOLO, | ) ) |
| Counterclaimant, | ) ) |
| v. | ) ) |
| TELECO, INC., WILLIAM M. ROGERS, and WILLIAM "BILLY" MICHAEL ROGERS II, | ) ) ) ) |
| Counterclaim Defendants. | ) |

C.A. No. 6:23-cv-03563-DCC

**OPINION AND ORDER**

This matter is before the Court on Defendant Brett Mutolo's ("Mutolo") Motion to Amend and Motion for Reconsideration. ECF Nos. 211, 212. For the following reasons, Mutolo's Motion to Amend is granted in part and denied in part and his Motion for Reconsideration is denied.

## I.  BACKGROUND

On July 24, 2023, Plaintiffs initiated this action against Mutolo, asserting claims for violations of the Federal RICO statute, breach of duty of loyalty, breach of fiduciary duty, fraud, constructive fraud, negligent misrepresentation, conversion, unjust enrichment, and accounting.  ECF No. 1 at 34–59.  On April 1, 2024, Plaintiffs filed their first amended complaint, which removed the claims brought under the Federal RICO statute against Mutolo.  *See* ECF No. 66.  Mutolo moved to dismiss the first amended complaint for lack of subject matter jurisdiction.  ECF No. 94.  On September 5, 2024, the Plaintiffs filed a consent motion to amend the first amended complaint, which was granted, and the second amended complaint ("SAC") was filed on September 6, 2024.  ECF No. 140. Accordingly, the Court denied Mutolo's motion to dismiss the first amended complaint as moot.  ECF No. 142.  In the SAC, Plaintiffs bring only state law claims and assert the Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.  ECF No. 140 at 3, 30–40.  On November 4, 2024, Mutolo moved to dismiss Plaintiffs' SAC for lack of subject matter jurisdiction.  ECF No. 161.  Mutolo also filed an Answer to the SAC,[1] asserting counterclaims against Plaintiffs and bringing a third-party complaint against Rogers Family Investments, LLC ("RFI"), New Era Asset Management, LLC ("NEAM"), Real Estate Unlimited, LLC ("REU"), WMR & Family, LLC ("WMR"), Bob Rogers ("Bob"), and Colin Rogers ("Colin") (collectively, the "Third-Party Defendants").  *See* ECF No. 145.

---

[1] Mutolo filed an amended answer as a matter of course.  *See* ECF Nos. 143, 145. For purposes of this Order, the Court will refer to Mutolo's amended answer as his "Answer."

Plaintiffs moved to dismiss Mutolo's counterclaims, and the Third-Party Defendants moved to dismiss Mutolo's third-party complaint. ECF Nos. 150, 167.

On June 10, 2025, the Court granted in part and denied in part Plaintiffs' Motion to Dismiss for failure to state a claim, granted the Third-Party Defendants' Motion to Dismiss for improper joinder under Rule 14, and denied Mutolo's Motion to Dismiss for lack of subject matter jurisdiction. *See* ECF No. 206. In granting the Third-Party Defendants' Motion to Dismiss, the Court granted Mutolo leave to file a motion to amend his pleadings to reflect the proper procedural mechanism by the which the Third-Party Defendant may be joined. *Id.* at 31–32. On June 25, 2025, Mutolo filed a Motion to Amend his Answer.[2] ECF No. 211. The Third-Party Defendants filed a response in opposition and Mutolo filed a reply. ECF Nos. 216, 218. On June 25, 2025, Mutolo also filed a Motion for Reconsideration, asking the Court to reconsider its ruling on his Motion to Dismiss for lack of subject matter jurisdiction. ECF No. 212. Plaintiffs filed a response in opposition and Mutolo filed a reply. ECF Nos. 217, 219. The Motions are now ripe for review.

## II. APPLICABLE LAW

### A. Motion to Amend

Federal Rule of Civil Procedure 15(a) states that a party may amend its pleading as a matter of course within 21 days after serving it or 21 days after service of a responsive pleading or motion. Fed R. Civ. P. 15(a)(1). After that time, a party may amend its pleading "only with the opposing party's written consent or the court's leave."

---

[2] Mutolo did not file a proposed amended answer along with his Motion to Amend, and instead cites to his Answer, ECF No. 145, throughout his Motion. ECF No. 211. Accordingly, in considering whether amendment is proper, the Court looks to Mutolo's previously filed Answer.

Fed. R. Civ. P. 15(a)(2). The Rule provides that the court "should freely give leave when justice so requires." *Id.* Leave to amend under Rule 15(a) "should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or amendment would be futile." *Matrix Cap. Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 193 (4th Cir. 2009). "If an amendment would fail to withstand a motion to dismiss, it is futile." *Woods v. Boeing Co.*, 841 F. Supp. 2d 925, 930 (D.S.C. 2012) (citing *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995)).

Federal Rule of Civil Procedure 13 governs counterclaims and crossclaims. It generally authorizes persons who are already parties to an action to assert counterclaims and crossclaims against opposing parties. It furthers the "general principle" that "it is preferred that the rights of all parties generally be adjudicated in one action." *Wired Fox Techs., Inc. v. Estep*, No. 6:15-cv-331, 2015 WL 13791844, at *7 (D.S.C. Sept. 21, 2015); *see also Lanier Bus. Products v. Graymar Co.*, 342 F. Supp. 1200, 1202 (D. Md. 1972) ("[C]ourts have typically construed subdivision (h) liberally in an effort to avoid multiplicity of litigation, minimize the circuity of actions, and foster judicial economy.").

When a party seeks to add a new party to a counterclaim or a crossclaim, Rule 13(h) governs. While "Rule 13 is remedial in nature, and must be construed liberally," it is not without limits. *Wired Fox*, 2015 WL 13791844, at *7. It, instead, "provides a proper means for [a] defendant . . . to seek to join all additional parties required for the granting of complete relief in the determination of its counterclaim." *Kinard v. Pet Milk Co.*, 38 F.R.D. 305, 307 n.4 (D.S.C. 1965). The subsection states: "Joinder of Additional Parties. Rules 19 and 20 govern the addition of a person as a party to a counterclaim or

crossclaim." Fed. R. Civ. P. 13(h). If the moving party is not seeking to add a new party to a counterclaim or cross claim, the court need not reach Rules 19 and 20.

**B. Motion for Reconsideration**

"Motions for reconsideration of interlocutory orders are not subject to the strict standards applicable to motions for reconsideration of a final judgment." *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514 (4th Cir. 2003). Instead, Rule 54(b) provides:

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b). Because the Fourth Circuit has offered little guidance on the standard for evaluating a Rule 54(b) motion, district courts look to the standards of motions under Rule 59 for guidance. *Sanders v. Lowe's Home Ctrs, LLC*, C.A. No. 0:15-cv-02313-JMC, 2016 WL 5920840, at *2 (D.S.C. Oct. 11, 2016). "Therefore, reconsideration under Rule 54 is appropriate on the following grounds: (1) to follow an intervening change in controlling law; (2) on account of new evidence; or (3) to correct a clear error of law or prevent manifest injustice." *Id.*; *see also Robinson v. Wix Filtration Corp.*, 599 F.3d 403, 407 (4th Cir. 2010); *Collison v. Int'l Chem. Workers Union*, 34 F.3d 233, 235 (4th Cir. 1994). It is the moving party's burden to establish one of these three grounds to obtain relief. *Loren Data Corp. v. GXS, Inc.*, 501 F. App'x 275, 285 (4th Cir. 2012). "However, a motion to reconsider an interlocutory order should not be used to rehash arguments the court has already considered merely because the movant is displeased with the outcome." *South Carolina v. United States*, 232 F.Supp.3d 785, 793

(D.S.C. 2017).  "Nor should such a motion be used to raise new arguments or evidence that could have been raised previously."  *Id.*

## III.  DISCUSSION

### A.  Motion to Amend

#### 1.  Joinder under Rules 13, 19, and 20

Mutolo seeks to add the Third-Party Defendants as defendants to his counterclaims against Plaintiffs.  ECF No. 211 at 2.  As outlined above and in the Court's prior order, Rule 13(h) is the proper mechanism for joining additional parties to counterclaims.  *See* ECF No. 206.  More specifically, "Rule 13(h) only authorizes the court to join additional persons in order to adjudicate a counterclaim . . . that already is before the court or one that is being asserted at the same time the addition of a nonparty is sought."  6 Wright & Miller, *Federal Practice and Procedure* § 1435 (Westlaw 3d ed. Apr. 2020).  "In other words, through Rule 13(h), there is a mechanism for a defendant to make a counterclaim against a plaintiff, and then also *join to that counterclaim* an absent party who the defendant thinks *should be a counterclaim co-defendant.*"  *Bonumose Biochem LLC v. Zhang*, No. 3:17-cv-00033, 2018 WL 3733651, at *9 (W.D. Va. Aug. 6, 2018) (emphasis added).  "This means that a counterclaim or crossclaim *may not be directed solely against* persons who are not already parties to the original action but must involve at least one existing party."  6 Wright & Miller, *Federal Practice & Procedure* § 1435 (emphasis added).  If Mutolo seeks to add the Third-Party Defendants as co-defendants to Plaintiffs, Rule 13(h) would apply, and this Court would then be compelled to consider the Rule 19 and Rule 20 analyses for joinder.

So, as an initial matter, the Court considers each of the claims raised against the Third-Party Defendants to determine whether they are named as *co-defendants* with the counterclaim defendants who were already present in this action.   Mutolo's Answer initially asserted ten causes of actions as counterclaims against Plaintiffs: (1) payment of wages pursuant to S.C. Code Ann. § 41-10-80(c) against TELECO Inc. ("TELECO"), William Michael Rogers ("Rogers Sr."), and William "Billy" Michael Rogers, Jr. ("Billy"). ("Count One"); (2) violation of Fair Labor Standard Act against TELECO, Rogers Sr., and Billy ("Count Two"); (3) breach of contract against TELECO, Rogers Sr., and Billy ("Count Three"); violation of South Carolina's Omnibus Adult Protection Act, S.C. Code Ann. 43-35-5 et seq., ("SCAPA") and Florida Adult Protective Services Act, § 415.101 et seq., ("FAPSA") against TELECO, Rogers Sr., and Billy ("Count Four"); violation of Florida Security of Communications Act, Fla. Stat. § 934.10 against TELECO, Rogers Sr., and Billy ("Count Five"); violation of the South Carolina Unfair Trade Practices Act ("SCUTPA"), S.C. Code Ann. § 39- 5-10 et seq. and/or the equivalent Florida Act (§ 501.201 et seq.) against TELECO, Rogers Sr., and Billy ("Count Six"); breach of fiduciary duty against TELECO, Rogers Sr., and Billy ("Count Seven"); promissory estoppel against TELECO, Rogers Sr., and Billy ("Count Eight"); conversion against TELECO, Rogers Sr., and Billy ("Count Nine"); and violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("Count Ten").  ECF No. 145 at 39–49.

The Court granted in part Plaintiffs' Partial Motion to Dismiss, and, accordingly, the following counterclaims were dismissed: Count Five, Count Six, and Count Ten.  *See* ECF No. 206 at 21, 25, 30.  Because these claims are no longer pending against Plaintiffs, joinder of the Third-Party Defendants under Rule 13(h) is not proper as these claims

7

would "be directed solely against persons who are not already parties to the original action."  6 Wright & Miller, *Federal Practice & Procedure* § 1435.  Thus, under the circumstances, these claims against the Third-Party Defendants "are not counterclaims at all, just new claims exclusively against [a] new [party]." *Bonumose Biochem*, 2018 WL 3733651, at *9.  Courts are clear that "[a] party 'may not assert a claim exclusively against non-parties and call it a 'counterclaim.'" *Id.* (citing *U.S. ex rel. Branch Consultants, LLC v. Allstate Ins. Co.*, 265 F.R.D. 266, 270 (E.D. La. 2010)).  Accordingly, to the extent Mutolo seeks to bring the same causes of actions that have already been dismissed against Plaintiffs, these are independent counterclaims that are not permitted under Rule 13(h) and Mutolo's Motion to amend and join the Third-Party Defendants to these claims pursuant to Rule 13(h) is denied.

Upon review of Mutolo's other asserted counterclaims, Mutolo seeks to join the Third-Party Defendants as co-defendants to counterclaims it already asserted against Plaintiffs.  Accordingly, the Court finds that Mutolo's proposed claims under Count One, Count Two, Count Three, Count Four, Count Seven, Count Eight, and Count Nine against the Third-Party Defendants meet the initial requirements of Rule 13(h).  *See* ECF No. 145.  Thus, the Court turns its attention to whether the Third-Party Defendants may be properly joined under Rule 19 or Rule 20.

As to Rule 19, Mutolo argues that joinder of the Third-Party Defendants is necessary as the Third-Party Defendants have an interest in the claims asserted by Plaintiffs because of their affiliations with Plaintiffs and if not brough in then the Court could not award complete relief to Mutolo because not all the responsible parties would be present.  ECF No. 211 at 5.  Alternatively, Mutolo asserts that his claims against the

Third-Party Defendants meet the standard for permissive joinder under Rule 20. *Id.* at 7. According to Mutolo, the counterclaims he seeks to join the Third-Party Defendants to as co-defendants arise from the same sets of facts as his claims already asserted against Plaintiffs. *Id.* The Third-Party Defendants contend joinder is not proper under either Rule 19 or 20. *See* ECF No. 216.

Fed. R. Civ. P. 19 governs required joinder. It states, in relevant part:

(a) Persons Required To Be Joined If Feasible.

(1) *Required Party.* A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

As explained by the Fourth Circuit, "[b]y forcing a court to examine the effects of a suit on parties not before it, Rule 19 of the Federal Rules of Civil Procedure 'takes . . . account of the very real, very substantive claims to fairness on the part of outsiders that may arise in some cases.'" *Teamster Local Union No. 171 v. Keal Driveway Co.*, 173 F.3d 915, 918 (4th Cir. 1999) (quoting *Provident Tradesmens Bank & Trust Co. v.*

*Patterson*, 390 U.S. 102, 125 (1968)).  "Rule 19 creates a two-step inquiry: first, whether a party is necessary to a proceeding because of its relationship to the matter under consideration; and second, if a necessary party is unavailable, whether the proceeding can continue in that party's absence."  *Id.* at 917 (internal quotations omitted); *see also Am. Gen. Life and Accident Ins. Co. v. Wood*, 429 F.3d 83, 92 (4th Cir. 2005) (discussing Rule 19 joinder requirements).  If the action cannot continue without that party, then "the party is indispensable[,] and the action should be dismissed." *Id.* at 917–18.

Permissive joinder is governed by Fed. R. Civ. P. 20, which provides in relevant part:

> (a) Persons Who May Join or Be Joined.
>
> > (2) *Defendants.* Persons—as well as a vessel, cargo, or other property subject to admiralty process in rem— may be joined in one action as defendants if:
> >
> > > (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
> > >
> > > (B) any question of law or fact common to all defendants will arise in the action.

Rule 20 also creates a two-prong test for joinder of defendants: "Persons . . .may be joined in one action as defendants if . . . any right to relief is asserted against them . . . with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; *and* any question of law or fact common to all defendants will arise in the action."  Fed. R. Civ. P. 20(a)(2) (emphasis added).  Courts have wide discretion under Rule 20 in whether to allow the permissive joinder of parties.  *Aleman v. Chugach Support Servs., Inc.,* 485 F.3d 206, 218 n. 5 (4th Cir. 2007).  In exercising its discretion, the Court

must construe Rule 20 in light of its purpose, which "is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits." *Saval v. BL Ltd.*, 710 F.2d 1027, 1031 (4th Cir. 1983) (citations omitted); *Aleman,* 485 F.3d at 218 n. 5. Further, under Rule 20, the "transaction or occurrence test . . . would permit all reasonably related claims for relief by or against different parties to be tried in a single proceeding. Absolute identity of all events is unnecessary." *Saval*, 710 F.2d at 1031.

As an initial matter, it is unnecessary to analyze joinder pursuant to Rule 19 because the issue of joinder for the seven counterclaims can be resolved under the more lenient standard provided in Rule 20.[3] *See, e.g.*, *Lanier Bus.*, 342 F. Supp. at 1202 (noting that because the parties met the requirements for Rule 20 "there is no need to determine whether they would meet joinder requirements of Rule 19, since the two rules provide alternative means of adding parties to a suit").

The Parties agree that Counts One, Two, Three, and Eight all arise out of Mutolo's allegations that he is owed or has otherwise been promised compensation that he did not receive from his employment with Plaintiffs and the Third-Party Defendants. *See* ECF Nos. 216 at 8–9; 218 at 3–4, 12. The Third-Party Defendants argue that Mutolo has distinct claims against each party and simply combining these claims into a single claim does not establish that each claim arises out of the same transaction or occurrence. ECF

---

[3] Although the Court does not address Mutolo's Rule 19 arguments, it notes that Mutolo repeatedly argues that it is necessary to add the Third-Party Defendants under Rule 19 because of their interests in Plaintiff's pending claims against Mutolo. *See* ECF No. 211. However, Mutolo has not moved to add the Third-Party Defendants as co-plaintiffs to these actions, nor does his Answer attempt to add them in this capacity. ECF Nos. 145, 211. Accordingly, the Court's consideration of the addition of the Third-Party Defendants as parties to this action is limited to the request Mutolo explicitly made — whether to add them as co-defendants to Mutolo's counterclaims.

No. 216 at 8. Accordingly, the Third-Party Defendants assert that joinder is not proper under Rule 20 for these claims. *Id.* at 8–9. Mutolo contends, however, that these claims all arise out of his employment with Plaintiffs and the Third-Party Defendants, which he alleges RFI, NEAM, TELECO, REU, and WMR were operated as a single business enterprise by Rogers Sr., Billy, Bob, and Colin such that all are responsible and liable for their failure to compensate Mutolo. ECF No. 218 at 4. Mutolo argues that Plaintiffs and the Third-Party Defendants were joint employers and so, with respect to his claims for payment of wages, he has asserted sufficiently under Rule 20 that the relief he seeks against the Third-Party Defendants arose out of the same transaction or occurrence. *Id.* at 12. Mutolo further asserts that, based on their alleged joint conduct, questions of law or fact common to all co-defendants to these counterclaims will arise in this action. *Id.*

The Court, in its discretion, finds that joinder of the Third-Party Defendants is appropriate as to Counts One, Two, Three, and Eight. These claims all arise out of Mutolo's alleged employment, the exact nature of which is still to be determined upon factual discovery. Because the Third-Party Defendants were allegedly operating as a single business enterprise and potentially were the joint employers of Mutolo during the same time period, these Third-Party Defendants may be jointly or independently liable with Plaintiffs. The Court finds that severing these claims would result in the kind of duplication that the liberal joinder rules were meant to prevent. *See Saval*, 710 F.2d at 1031 (citations omitted).

Turning to the remaining Counts — Counts Four, Seven and Nine – the Court finds that joinder of the Third-Party Defendants as to these causes of action is also appropriate under Rule 20. The Third-Party Defendants contend that these causes of actions "all

essentially allege that the Third-Party Defendants are joint tortfeasors with Plaintiffs," but Mutolo has failed to explain how questions of law and fact are common to all the Third-Party Defendants. ECF No. 216 at 9. Accordingly, the Third-Party Defendants contend that Mutolo's analysis is insufficient to establish that permissive joinder under Rule 20 is proper. *Id.* Mutolo argues that his allegations against the Third-Party Defendants go beyond merely joint tortfeasor allegations. ECF No. 218 at 5, 12–14. Specifically as to his claim for violations of SCAPA and FAPSA, Mutolo contends that since Plaintiffs admit that Mutolo worked for both them and RFI, NEAM, and Bob and his claim arises out of that employment that he has asserted enough to show his claims arise jointly, severally, or out of the same transaction or occurrence and that there are shared questions of law or fact common to both the Third-Party Defendants and to Plaintiffs. *Id.* at 13. Mutolo further argues that the same is true for his breach of fiduciary duty claim because that claim arises out of the Third-Party Defendants and Plaintiffs' access of his crypto accounts and subsequent lockdowns and lost funds. *Id.*

The Court again, in its discretion, finds that joinder of the Third-Party Defendants is appropriate as to Counts Four, Seven, and Nine. These claims all arise out of the Third-Party Defendants and Plaintiffs' alleged treatment of Mutolo during his purported joint employment as well as Third-Party Defendants and Plaintiffs' alleged attempts to access certain accounts held in Mutolo's name. *See* ECF No. 145. Accordingly, the Court finds that these causes of action all arise out of the same transaction or occurrence. Additionally, the claims against the Third-Party Defendants, even as joint tortfeasors, would raise similar question of law and fact. Although the issues related to each individual co-defendant to Mutolo's counterclaims may not be identical, under the permissive joinder

rules the Court finds that nevertheless joinder is appropriate as to these claims under the circumstances when it considers the purpose of the rule — promoting trial convenience, expediting the final determination of disputes, and preventing multiple lawsuits. *Saval v. BL Ltd.*, 710 F.2d 1027, 1031 (4th Cir. 1983) (citations omitted); *Aleman,* 485 F.3d at 218 n. 5. Accordingly, the Court finds that Rule 20 permits joinder of the Third-Party Defendants on the seven counterclaims currently pending before the Court.[4]

2. Amendment under Rule 15

As the Court has found that the Third-Party Defendants can be joined under Rule 20's permissive standard, it turns its attention to whether Rule 15 permits amendment. "[A] court determining whether to grant a motion to amend to join additional plaintiffs must consider both the general principles of amendment provided by Rule 15(a) and also the more specific joinder provisions of Rule 20(a)," which the Court addressed above. *Hinson v. Norwest Financial S.C., Inc.*, 239 F.3d 611, 618 (4th Cir. 2001) (internal citation omitted). Leave to amend under Rule 15(a) shall be given freely absent any apparent reason, such as bad faith, undue prejudice to the opposing party, or futility of amendment. *See Foman v. Davis,* 371 U.S. 178, 182 (1962); *Davis v. Piper Aircraft Corp.,* 615 F.2d 606, 613 (4th Cir. 1980).

The Third-Party Defendants argue generally that joinder of all the Third-Party Defendants is improper because joining them at this stage in litigation would cause

---

[4] The Court notes that the Third-Party Defendants raise issues of prejudice, expense, and delay in joining the Third-Party Defendants as co-defendants to Mutolo's counterclaims. ECF No. 216 at 10. While these arguments are properly raised in opposition to joinder under Rule 20, given the procedural posture of this Motion, the Court addresses these arguments below in its analysis of whether amendment is proper under Rule 15.

prejudice, expense, and delay. ECF No. 216 at 10. The Third-Party Defendants also specifically challenge the joinder of WMR and REU under Rule 15 because they argue that joining these parties would be futile based on the allegations against them. *Id.* at 11–12. Mutolo argues that amendment to join the Third-Party Defendants to this action would not prejudice Plaintiffs as Plaintiffs have only recently filed their answer to his counterclaims and the counterclaims are directly related to the responsibility for the loss of cryptocurrency and Mutolo's employment handling Plaintiffs' cryptocurrency investments, the issue underlying Plaintiffs' claims against Mutolo. ECF No. 218 at 14. Mutolo further argues that his claims against WMR and REU are not futile because these entities were part of the network of other entities owned and operated by the individual parties subject to this action. *Id.* at 15. Mutolo also contends WMR and REU are integral to Plaintiffs' claims against him. *Id.*

First, the Court finds that joinder of the Third-Party Defendants to Mutolo's counterclaims do not cause the Third-Party Defendants or Plaintiffs undue prejudice, expense, or delay. While this action has now been pending for well over two years, the claims against the Third-Party Defendants and Plaintiffs were first raised in September of 2024. *See* ECF Nos. 1, 143, 145. The counterclaims against the Third-Party Defendants were dismissed on procedural grounds on June 10, 2025, with leave for Mutolo to file a motion to amend to reassert these claims. *See* ECF No. 206. This Order also addressed Plaintiffs' pending Motion to Dismiss, and Plaintiffs filed their answer to Mutolo's counterclaims on July 9, 2025. ECF Nos. 206, 215. Mutolo moved to amend on June 25, 2025. ECF No. 211. Accordingly, there has been no undue delay in Mutolo seeking amendment. Moreover, the Court finds no prejudice to Plaintiffs or the Third-Party

Defendants, who have been aware of these potential claims for over a year, especially when the case, while two years old, is still in early stages of litigation.

The Court is further unpersuaded by the Third-Party Defendants' arguments regarding prejudice because these counterclaims "only serve as a distraction" and will require them to "serve and respond to written discovery and schedule depositions." ECF No. 216 at 10. As the Court has already found, these claims against the Third-Party Defendants arise out of the same transactions or occurrences as other claims already pending in the case, and having to engage in the ordinary discovery obligations of a lawsuit is not prejudicial. For these reasons, the Court finds amendment proper under Rule 15 with respect to the Third-Party Defendants arguments regarding prejudice in joining the Third-Party Defendants to this action.

Turning specifically to the Third-Party Defendants' argument regarding futility of the counterclaims as to WMR and REU, the Court agrees that Mutolo's counterclaims as set out fail to state a claim against either WMR or REU and therefore allowing amendment to add these claims under Rule 15 would be futile. Under Rule 15(a), a "proposed amendment is futile when it is 'clearly insufficient or frivolous on its face.'" *Save Our Sound OBX, Inc. v. N.C. Dep't of Transp.*, 914 F.3d 213, 228 (4th Cir. 2019) (quoting *Johnson v. Orowheat Foods*, 785 F.2d 502, 510 (4th Cir. 1986)). A proposed amendment is also futile if it would add a new claim that fails to state a claim upon which relief could be granted and, thus, would not survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See Save Our Sound OBX*, 914 F.3d at 228; *U.S. Airline Pilots Ass'n v. Awappa, LLC*, 615 F. 3d 312, 320 (4th Cir. 2010) (stating that a court need not grant leave to amend where the amendment would have "no impact on the outcome of the motion to dismiss").

Mutolo makes the following specific allegations as to WMR and REU:

> 241.  Upon information and belief, TELECO, RFI, NEAM, REU, and WMR are owned by one or more of the Rogers and/or other family members.

> 346.  RFI, NEAM, TELECO, REU, and WMR were effectively operated as a single business enterprise by [Rogers Sr.], Billy[], Bob, and Colin, and so all Mutolo Claim Defendants are responsible and liable under all claims under the single business enterprise theory.

> 355. RFI, NEAM, TELECO, REU, and WMR were effectively operated as a single business enterprise by [Rogers Sr.], Billy[], and Bob, and so all six of these Mutolo Claim Defendants are responsible and liable under the single enterprise theory for all Unpaid Wages.

ECF No. 145 at 28, 38, 39.  All other allegations made against these two entities are made generally against the "Mutolo Claim Defendants," which group WMR and REU together with all other Third-Party Defendants and Plaintiffs.  *See id.*  Mutolo argues that the three paragraphs cited above, which are the only three paragraphs specifically naming WMR and REU, are sufficient to state a claim against WMR and REU because they "adequately allege that these entities were part of the Rogers family network that joined together and harmed [Mutolo]."  ECF No. 218 at 15.  Mutolo does not allege he performed any work for WMR or REU or that he was employed by REU and WMR or that any of the other named counterclaim co-defendants was acting on behalf of REU or WMR. *See* ECF Nos. 145; 211; 218.  Rather, Mutolo's claims against WMR and REU rise and fall on his allegations that WMR and REU were "effectively operated as a single business enterprise."  *See* ECF Nos. 145 at 28, 38, 39; 218 at 15.

Single business enterprise theory, also called the "amalgamation of interests theory," is a principle recognized by the Supreme Court of South Carolina and is defined

as "where multiple corporations have unified their business operations and resources to achieve a common business purpose and where adherence to the fiction of separate corporate identities would defeat justice, courts have refused to recognize the corporations' separateness, instead regarding them as a single enterprise-in-fact, to the extent the specific facts of a particular situation warrant." *Pertuis v. Front Roe Restaurants, Inc.*, 817 S.E.2d 273, 279 (S.C. 2018). Significantly, "the single business enterprise theory requires a showing of more than the various entities' operations are intwined . . . [c]ombining multiple corporate entities into a single business enterprise requires further evidence of bad faith, abuse, fraud, wrongdoing, or injustice resulting from the blurring of the entities' legal distinctions." *Id.* at 280–81.

A court may refuse to recognize multiple businesses as separate and instead consider them as one entity when the businesses "have unified their . . . operations and resources to achieve a common business purpose and where adherence to the fiction of separate corporate identities would defeat justice." *Pertuis*, 817 S.E.2d at 279. The application of the single business enterprise theory should not be applied "without substantial reflection." *See Stoneledge at Lake Keowee Owners' Ass'n, Inc. v. IMK Dev. Co., LLC*, 866 S.E.2d 542, 551 (S.C. 2021) ("Like other methods of invading the corporate form, invocation of the single business enterprise theory should be reserved for drastic situations and is the rare exception, not the rule."). To demonstrate the related single business enterprise theory, a party "must show both (1) the intertwining of the operations of the entities and (2) evidence of 'bad faith, abuse, fraud, wrongdoing, or injustice resulting from the blurring of the entities' legal distinctions.'" *Stoneledge*, 866 S.E.2d at 551 (quoting *Pertuis.*, 817 S.E.2d at, 280–81). The Supreme Court of South Carolina has

made clear that the injustice requirement under the single business enterprise theory analysis necessitates something more than "a subjective perception of unfairness." *Pertuis*, 817 S.E.2d at 280 (quoting *SSP Partners v. Gladstrong Invs. (USA) Corp.*, 275 S.W.3d 444, 455 (Tex. 2008)). The evidence of bad faith, abuse, fraud, wrongdoing, of injustice must be "the kinds of abuse, specifically identified, that the corporate structure should not shield—fraud, evasion of existing obligations, circumvention of statutes, monopolization, criminal conduct, and the like." *Id.*

As an initial matter, the Court finds that Mutolo's allegations are insufficient to show that the operations of WMR and REU were intertwined to achieve a common business purpose. Mutolo does not make any allegations about the operations and business purposes of either WMR and REU. *See* ECF No. 145. The only allegations concerning WMR and REU's business structure is that these two entities "are owned by one or more of the Rogers and/or other family members." *Id.* at 28. However, overlapping ownership of a business entity alone is not enough to demonstrate that it is intertwined with other entities or shares a common business purpose. *See, e.g.*, *Fowler v. SSC Seneca Operating Co., LLC*, No. CV 8:21-00430-HMH, 2023 WL 35936, at *5 (D.S.C. Jan. 4, 2023) (finding the plaintiff's allegations to be conclusory recitations of various factors relevant to the joint venture, alter ego, veil piercing, and single-business enterprise analyses and insufficient to establish personal jurisdiction for businesses with commons owners because the plaintiff failed to explain these businesses "were involved in the ownership, operating, and/or management" of the facility at issue or how they "affected the budget, staffing, training, supervision, development and implementation of policies and procedures for the [f]acility"). Indeed, there is no allegations before the Court at all

concerning the specific operations and purposes of WMR and REU, so the Court cannot ascertain whether Mutolo has plausibly alleged these operations or purposes are shared with the other corporate counterclaim co-defendants, specifically TELECO, RFI, and NEAM. Accordingly, Mutolo's allegations are insufficient to show that WMR and REU are intertwined with these other entities such that the single business enterprise theory should apply.

Even if the Court were to find Mutolo presented evidence sufficient to show the operations of WMR, REU, and the other corporate counterclaim co-defendants were intertwined, Plaintiffs have failed to prove "bad faith, abuse, fraud, wrongdoing, or injustice resulting from the blurring of the entities' legal distinctions" sufficient to trigger the application of a single business enterprise. *Pertuis*, 817 S.E.2d at 280–81. As noted above, there are no specific allegations regarding WMR and REU's actions or actions taken on their behalf. The only allegations specifically made against them are conclusory allegations about being owned or operated by the same individuals and thus these are a "single business" and must be amalgamated with other businesses owned by those individuals. Mutolo then goes on to make several allegations against these businesses, lumped together as one "Mutolo Claim Defendants." In arguing that he has sufficiently alleged the harm necessary to invoke the "single business enterprise" theory, Mutolo points to his allegations that the Third-Party Defendants evaded tax liability through manipulating, exploiting, and controlling Mutolo through false promises; the unpaid wages were "wrongfully and intentionally" withheld by the Third-Party Defendants from Mutolo; and the Third-Party Defendants abused Mutolo, including threats to Mutolo and

exploitation of Mutolo's mental and emotional vulnerabilities in order to gain profit or advantage.  ECF No. 218 at 5.

Considering the liberal amendment standard under Rule 15 in conjunction with the requisite hesitancy to invade the liability limitations imposed by the corporate form, the Court finds the conduct of WMR and REU and the other corporate counterclaim co-defendants "fall[s] short of indicating that defendants' corporate structure allowed them to perpetuate their allegedly unlawful . . . practices." *Guldenzoph v. Indigo Rd. Hosp. Grp.*, No. 2:23-CV-05339-DCN, 2024 WL 2848462, at *7 (D.S.C. June 4, 2024).  While tax evasion, evasion of existing obligations, and abuse are likely within the parameters of what the Supreme Court of South Carolina has considered to be "the kinds of abuse, specifically identified, that the corporate structure should not shield," Mutolo has failed to make specific allegations that the amalgamation of *WMR and REU* with the other corporate counterclaim co-defendants led to these harms.  *Pertuis*, 817 S.E.2d at 280. For the single business enterprise theory to be applicable, Mutolo must sufficiently allege "evidence of bad faith, abuse, fraud, wrongdoing, or injustice *resulting from the blurring* of the entities' legal distinctions." *Id.* at 280–81 (emphasis added).  While Mutolo's allegations show evidence of injustice as anticipated by the single business enterprise theory, he has failed to make allegations to sufficiently show that these injustices *resulted from the blurring* of WMR and REU and the other corporate counterclaim co-defendants. While Mutolo makes extensive allegations regarding the collaborative operations and interplay between the other counterclaim co-defendants over the course of his employment with them, he makes no allegations that he was employed by either WMR or REU nor are there any allegations that the other counterclaim co-defendants operated on

behalf of WMR or REU or vis versa.  For many of the same reasons the Court finds there are insufficient allegations to find that WMR or REU are intertwined with other corporate entities in this action, there are also insufficient allegations to finds that any injustices alleged in this action resulted from the blurring of the entities legal distinctions.  Mutolo does not allege specifically how these *individual* corporate entities, specifically WMR or REU, were amalgamated or operated as a single business enterprise other than that they are owned or operated by the same or similar individuals and conclusory allegations that they are operated as a "single business enterprise."  This is not enough to state a claim against WMR or REU.  Accordingly, the Court finds that allowing amendment to add WMR or REU based on Mutolo's allegations would be futile.  Thus, the Court denies Mutolo's Motion to Amend to the extent it seeks to assert causes of action against WMR or REU.

Accordingly, Mutolo is granted leave to amend his Answer as follows: he may join RFI, NEAM, and Bob to Count One, Count Two, Count Three, and Count Eight[5]; he may join RFI, NEAM, Bob, and Colin to Count Four, Count Seven, and Count Nine.  *See* ECF No. 145.  Mutolo's request to add any parties to Count Five, Count Six, and Count Ten is denied as these claims are no longer pending before the Court.  Mutolo's request to join WMR and REU as counterclaim co-defendants is denied.

## B.  Motion for Reconsideration

Mutolo also seeks reconsideration of the Court's Order denying his Motion to Dismiss based on lack of subject matter jurisdiction.  *See* ECF No. 212.  Mutolo argues two bases for reconsideration: (1) the Court reached an inaccurate factual conclusion

---

[5] Based on Mutolo's Answer, he does not seek to add Colin to Count One, Count Two, Count Three, and Count Eight.  *See* ECF No. 145 at 40 n.1, 41 n.2, 41 n.3, 47 n.4.

regarding Rogers Sr.'s domicile; and (2) the Court failed to address allegedly false testimony proffered by Rogers Sr. in support of his domicile. *Id.* at 2–3. Plaintiffs opposed Mutolo's Motion for Reconsideration because Mutolo's arguments for reconsideration represent nothing more than disagreements with the Court's conclusions, which is an insufficient basis for reconsideration. ECF No. 217.

Having reviewed the applicable law and the arguments and submissions of the parties, the Court denies Mutolo's Motion for Reconsideration. First, the Court finds that Mutolo's challenges to the Court's alleged "inaccurate factual conclusions" is simply a rehashing of arguments the Court has already considered where Mutolo disagreed with the outcome. Mutolo cites to evidence concerning Rogers Sr.'s current address in Florida as of the filing of Mutolo's Motion to Dismiss in 2024 as well as evidence of Roger Sr.'s domicile from 2005 to early 2023 and concludes that this is "direct evidence of his Florida domicile in July 2023." ECF No. 212 at 2–3. However, the Court considered this evidence in its prior order and found it insufficient to establish Rogers Sr. was domiciled in Florida at the time this action was filed in 2023 in light of other contrary evidence in the record. *See* ECF No. 206 at 16. The evidence cited by Mutolo is some evidence that Rogers Sr. was domiciled in Florida at times other than when the complaint in this action was filed, but it is by no means dispositive evidence of his domicile at the time of filing in 2023. The Court finds its prior reasoning regarding this evidence is correct. Moreover, Mutolo's Motion regarding this evidence does not present a question of inaccurate factual conclusions, but rather a disagreement with the Court's conclusions about what the facts showed based upon a preponderance of the evidence standard. This is not a valid basis for reconsideration. Accordingly, Mutolo's Motion is denied with respect to this argument.

23

Second, turning to Mutolo's argument that the Court failed to address allegedly false testimony proffered by Rogers Sr., the Court also finds this to be an insufficient basis for reconsideration of its prior Order. Mutolo argues the Court improperly relied on Rogers Sr.'s declaration and did not address false statements made by Rogers Sr. in that declaration. ECF No. 212. While the Court's Order denying Mutolo's Motion to Dismiss based on lack of subject matter jurisdiction did not explicitly address the allegedly false statements made by Rogers Sr., the Court makes clear now that it considered these allegations and found, considering all the evidence and based on a preponderance of the evidence standard, that Rogers Sr. was domiciled in the state of South Carolina at the time this action was filed. Specifically, the allegedly false statements all pertained to Rogers Sr.'s purported domicile in Florida at times other than the time of filing of this action, i.e., his conduct in 2018 and 2021. ECF Nos. 161 at 17; 162-2. Again, as explained above while this is some evidence of Rogers Sr.'s domicile in Florida at certain points in time, it is not determinative of his domicile in 2023 when this action was filed. Mutolo's argument that these "false" representations nullify Rogers Sr.'s entire declaration and thus devest this Court of jurisdiction is unpersuasive. While arguably some of Rogers Sr.'s assertions made in his declaration are contradicted by evidence put forth by Mutolo, this evidence does not go to the relevant time period the Court must consider when determining its jurisdiction—the time of filing of this action.[6]

---

[6] The Court further notes that the evidence relied upon by Mutolo also does not conclusively prove that Rogers Sr.'s statements regarding his conduct in 2018 and 2021 were false. *See* ECF No. 162-2 (representing that person named "William Michael Rogers" voted in the 2021 school board and municipal election and 2018 general election but also providing that "[w]e cannot represent that this information is for the person you seek and/or that it is accurate or complete; only that this information currently exists for a person with this name and demographics").

Furthermore, as set out in its prior Order, the Court did not rely solely on Rogers Sr.'s declaration in determining that it had jurisdiction over this action.  *See* ECF No. 206. Rather, Rogers Sr.'s declaration was weighed alongside and against other evidence based on the preponderance of the evidence standard.  *See id.*  Mutolo does not argue that a preponderance of the evidence standard is the wrong legal standard, nor does he argue that there has been an intervening change in the law or new evidence.  *See* ECF Nos. 212, 219.  Accordingly, the Court finds there is no valid basis for reconsideration and Mutolo's Motion is denied.

## IV.  CONCLUSION

For the foregoing reasons, Mutolo's Motion to Amend [211] is **GRANTED IN PART** and **DENIED IN PART** as set forth herein, and Mutolo's Motion for Reconsideration [212] is **DENIED**.

IT IS SO ORDERED.

s/ Donald C. Coggins, Jr.
United States District Judge

November 25, 2025
Spartanburg, South Carolina